JOHN B. DARLING AND ANOTHER *v.* JAMES P. OSBORNE
AND OTHERS.

[ IN CHANCERY. ]

*Partial Failure of Consideration.　Covenant for Title.　Taker
of Overdue Promissory Note.　Deed.　Description.
Purchaser Pendente Lite.　Practice in
Chancery.　Parties.　Costs.*

In partial defence to a petition to foreclose a mortgage given to secure the purchase-
money of the mortgaged premises, the mortgagor alleged conveyance to him of no
title to one lot thereof.　It appeared that the mortgagee's grantor, who had con-
veyed with covenant of title, had no title to the lot other than a defective tax-title
to an undivided part thereof; but it did not appear but that his possessory title to
the lot was sufficient to hold it against every one but the original proprietor, whose
heirs had been searched for but not found.　The mortgagee's grantor was solvent,
and able to make good his covenant for title.　*Held,* no equitable defence, and that
defendant should be left to pursue such remedy as he might have at law.

One who takes an overdue negotiable promissory note, takes it subject to all equities
then existing between payee and maker.

On sale of land in several lots, the vendor in good faith represented to the vendee that
each lot contained a hundred acres, and probably more, and they were described in
the deed as "supposed to contain one hundred acres each, more or less."　The vendee
purchased, relying on the representation, but afterwards found that two of the lots
contained much less than represented.　*Held,* on petition to foreclose a mortgage
given for the purchase-money, that the vendee was equitably entitled to have the
amount said two lots were worth less than they would have been at the time of pur-
chase had they contained the number of acres represented, deducted from the
amount of the mortgage note as of its date.

Parties who acquire an interest in the subject-matter of a suit *pendente lite,* are bound
by the judgment or decree therein.

In chancery it is the practice, where persons interested in the subject-matter of a suit
are numerous, like the holders of railroad bonds, for example, not to make them all
parties, whether orators or defendants, but to bring before the court only a number
sufficient to represent the rights of all.

The defendants having prevailed on only one ground of their defence and failed on
the other two, no costs were allowed either party after the first term; and the peti-
tioners were allowed such costs only as they would have been entitled to had decree
of foreclosure passed at the first term without hearing.

PETITION FOR FORECLOSURE.　The petition, which was filed at
the June Term, 1876, Caledonia County, by Darling alone, al-

leged that on June 8, 1871, defendant Osborne executed to the Montpelier & Wells River Railroad Company a mortgage of certain land in Groton, described therein as " lots number twenty-five, seventy-six, seventy-three, and sixty-two, supposed to contain one hundred acres each, more or less," and further described by reference to a deed of the same date of the same land from said company to Osborne ; that said mortgage was conditioned for the payment of Osborne's promissory note of that date for $2,000, payable to said company or bearer on demand after its road was ready for the transaction of business, with interest annually, but not to be on interest unless the road was built and ready for the transaction of business within five years from date ; that said road was built and ready for the transaction of business within the five years, whereof Osborne had had notice, and that said note had thereby become due and payable, with interest from its date ; that said company, for a valuable consideration, duly sold and assigned said note and mortgage to Darling, who became and was the legal holder thereof, of which Osborne had due notice, and promised to pay the same according to their tenor and effect, but that, though often duly requested, he had neglected and refused so to do ; that on October 5, 1872, Osborne conveyed an undivided half of said premises to defendant William Woodbury, and that on November 7, 1872, they together executed to defendant E. T. Quimby, George E. E. Sparhawk and another, partners under the name of the Groton Pond Lumber Company, a contract, granting them the right to enter upon the mortgaged premises, and cut and haul timber therefrom, which contract was in full force.

At the same term the petitioner filed an amended petition, alleging that said company, for a valuable consideration, had transferred whatever balance there might be due on said note after paying Darling's claim on said company, to D. R. Sortwell, who took the same without notice of any defence to the note, but understanding that it was due and wholly unpaid ; that Sortwell had become the owner of " the majority " of the first-mortgage bonds of said road, and caused the mortgage to be foreclosed, and that he and the other bondholders had formed a new corporation un-

der the same name ; and making said Sortwell co-petitioner with said Darling, and said company co-defendant with Osborne, &c.

The defendants Osborne, Woodbury, Quimby, and others answered ; Osborne admitting the execution of the mortgage and the completion of the road, &c., as alleged, but denying that the note or any part thereof was due and owing from him, and denying the receipt of notice from Darling otherwise than by a letter from him saying that he owned the note and. mortgage, to which he replied that he had a good defence to the note, of which he should avail himself. The answer on the part of Osborne proceeded further to allege on information and belief, that Darling took the note, if at all, as collateral security for some real or pretended debt due to him from said company, long after it was over-due, and with full notice of the matters in defence thereinafter alleged, and subject to all equities existing between maker and payee ; that in June, 1871, the manager and officers of said company, who had authority to contract for the company, urged Osborne to buy lands of the company in Groton, and engage in the manufacture of lumber, and offered to sell him the lots in question for $4,000, representing that each lot overran a hundred acres ; that Osborne, relying on such representations, purchased said lots for that sum, paying $2,000 in money, and executing the note and mortgage in question for the remainder, and that said company conveyed the same to him by deed, covenanting for title, and describing said lots as, " supposed to contain one hundred acres each, more or less " ; that two of said lots were not whole lots, but what were generally called half lots, and contained only forty-four acres each, and that by reason thereof the consideration had in part failed ; that Osborne was informed and believed that said manager and officers were informed of the deficiency in said lots, and made the representations aforesaid with intent to deceive ; that Osborne was also informed that to another of said lots said company had no title and conveyed none, and that by reason thereof, and of said deficiency, said Osborne had been damaged to the amount of more than $2,200, which he claimed the right to deduct from said note as of its date. The answer on the part of Osborne and Woodbury further alleged that, after the purchase of

said lots by Osborne, Osborne conveyed to Woodbury an un-divided half thereof, and formed with him a copartnership for the purpose of engaging in the manufacture of lumber in Groton, and informed said manager and officers thereof and of their intention to buy other land in the vicinity, to erect a steam mill, and there to manufacture a large quantity of lumber, and so to furnish to said company a large amount of freight to be transported over its road ; that said manager and officers thereupon, in consideration of such additional purchases and the construction of said mill, agreed to construct a track at the expense of the company, from the company's road to said mill, a distance of about a third of a mile, and to furnish good railroad facilities for the transportation of lumber therefrom ; that thereupon, relying on said agreement, Osborne and Woodbury purchased other land at an expense of $11,500, and entered into a contract with defendant Quimby, whom they informed of said agreement, whereby they agreed to furnish him a mill site, timber lands, &c., and he agreed to erect a mill, which he did at an expense of about $20,000, to saw lum-ber, paying them therefor at an agreed price, and to ship the same to market ; that after those investments had been made the com-pany became embarrassed, and represented to Osborne and Wood-bury that it could not then construct said track, but promised that if said defendants would do so, the expense thereof should be repaid to them by application on the note in suit.; that they there-upon, in reliance on said promise, constructed such track at an expense of about $3,400, all of which was incurred before the note was transferred, if it ever was transferred, to Darling ; that the note was thereby largely overpaid before it came into Dar-ling's possession, of which Darling had notice, and that the note was transferred collusively, and with the design to defraud said defendants.

By amendment of the answer, Osborne alleged that the original company, and the new one formed by the stockholders as alleged, owned an interest in the note, and were proper parties, petition-ers, and that Darling had no title to the note.

The Montpelier and Wells River Railroad Company answered, alleging that it turned out the note to Darling, to secure a large

debt that it then owed him, without knowing of any defence
thereto, or of any defect or failure of consideration, or that any
such claim was made by Osborne; that said company became
embarrassed, by its floating debts, and on October 13, 1874, sur-
rendered its property to the trustees of the holders of its mort-
gage bonds, in whose behalf said Sortwell and James G. French
took possession thereof, agreeing to apply the same in payment of
such debts, the amount of which exceeded the value of said prop-
erty by the sum of $55,201.69, and agreeing further, in conside-
ration of such surrender, to pay said excess; that soon after said
surrender, French and Sortwell failing to agree, French was
released and Sortwell assumed all the original liability; that the
note exceeded the debt due Darling from the company; that at
the time of said surrender, that excess was reckoned as assets,
and turned over to Sortwell, and that if it was recovered of Os-
borne, it would be a loss to Sortwell, who had paid nearly all the
creditors of the company, relying on that excess as part of the
assets; that French never had authority to promise for said com-
pany as alleged in the answer of Osborne; that the mortgaged
premises were taken by the company on a subscription to its capi-
tal stock; that none of its directors ever knew the number of
acres in any of said lots, and never took measures to find out;
that the company owned said land but a short time, and, when it
was sold, supposed it was sold by the lot, without reference to the
number of acres; that if said company had known of the condi-
tions alleged by Osborne, it would never have consented to the
contract; and that Osborne had never offered to rescind.

The answers were traversed and testimony taken.

At the hearing, it was ordered by the court, Ross, Chancellor,
that the cause be referred to a master, " to find the comparative
value of lot No. 62, as represented in the purchase by Osborne,
if the lots purchased had been full lots "; to find how much less
lots No. 73 and 76 were worth at the time of said purchase than
they would have been had they been as large as the average of
lots in the same division; and to find how much they were worth
less than they would have been if they had contained one hundred
acres each.    The master found that in 1871 the value of lot 62,

compared with the other lots purchased, provided they had each contained the number of acres of the average lot in that division, was one sixth of the whole purchase, or $666.67 ; that the lots in that division contained, on an average, one hundred acres ; that lot 73 contained sixty acres and four rods, or thirty-nine acres and one hundred and fifty-six rods less than the average of lots in that division, that the value of that lot per acre was 22.83, and that the value of the lot was $912.64 less than it would have been if it had been of average size; that lot 76 contained fifty-three acres, or forty-seven less than the average, that its value per acre was $17.91, and that the value of the lot was $842 05 less than it would have been if the lot had been of average size.

At the June Term, 1878, the bill was dismissed with costs. Appeal by the orators.

*Leslie & Rogers*, for the orators.

The note was negotiable, and not over due, and Darling may maintain suit thereon in his own name, free from all equities. *Smilie* v. *Stevens*, 33 Vt. 315 ; *Barry* v. *Harris*, 49 Vt. 392 ; 2 Story Eq. Jurisp. ss. 1040, 1046.

Darling is a *bona fide* holder of the note for value without notice of any defence, and is protected from the defence alleged. · The representations as to the size of the lots were made in good faith, and Osborne was not deceived thereby. If there was any mistake in the deed, the defendants should have brought a cross-bill.

The defendants are not entitled to any deduction from the mortgage debt on account of the failure of title to lot No. 62. Hooper's covenant ran with the land, and the defendants have a good remedy at law thereon.

*Belden & Ide*, for the defendants.

The note is subject to all equities, having been non-negotiable and having been taken overdue, and this suit being for the foreclosure of the mortgage. *Downer* v. *Tucker*, 31 Vt. 204 ; *Smilie* v. *Stevens*, 39 Vt. 315 ; *Foot* v. *Ketchum*, 15 Vt. 258 ; *Paddock*

v. *Jones,* 40 Vt. 474 ; *Schafer* v. *Reilley,* 50 N. Y. 61 ; *Union National Bank* v. *Privner,* 25 N. J. Eq. 495, and cases *passim.*

The orator took the note with actual notice.

The defendants are entitled to an allowance by reason of the failure of title to lot No. 62. The company had no title. Its deed to Osborne contained the usual covenant of seisin. That covenant was broken the instant the deed was executed. *Richardson* v. *Dorr,* 5 Vt. 13 ; *Mills* v. *Catlin,* 22 Vt. 98 ; *Catlin* v. *Hurlbutt,* 3 Vt. 403 ; *Swazey* v. *Brooks,* 30 Vt. 692 ; *Clark* v. *Conro,* 38 Vt. 469 ; *Downer* v. *Smith,* 38 Vt. 464 ; 3 Washb. Real Prop. 382, 390, 391. For the breach of the covenant of seisin, the rule of damages is the consideration paid. *Garfield* v. *Williams,* 2 Vt. 327 ; *Catlin* v. *Hurlbutt, supra ; Richardson* v. *Dorr,* 5 Vt. 9 ; *Blake* v. *Burnham,* 29 Vt. 437 ; *Downer* v. *Smith, supra.* That sum Osborne might have recovered on his covenant. The defendants seek to apply it here, and that they may do. It would be inequitable in any case to compel them to pay the whole and leave them to resort to a cross-action on the covenant. But when the vendor is insolvent, as in the present case, another element of equity is added. The cross-action would be unavailing, and a court of equity would enjoin the collection of the purchase-money. *Ingram* v. *Morgan,* 4 Humph. 66 ; *Remick* v. *Remick,* 5 W. Va. 285 ; *Hinkle* v. *Margerum,* 50 Ind. 240 ; *Yonge* v. *McCormick,* 6 Fla. 368 ; *Keyton* v. *Brawford,* 5 Leigh, 39 ; *Peckett* v. *McDonald,* 6 How. 269 ; *Moore* v. *McCook,* 4 Hey. 84 ; *Bowen* v. *Thrall,* 28 Vt. 386.

Or the vendee might defend in an action on the note or mortgage on the ground of a total or partial failure of consideration, or of an equitable offset. *Twitchell* v. *Bridge,* 42 Vt. 74 ; *Coy* v. *Downie,* 14 Fla. 544 ; *Gober* v. *Hart,* 36 Texas, 139 ; *Booth* v. *Safford,* 46 Ga. 178 ; *Wafford* v. *Ashcroft,* 47 Miss. 641 ; *Latham* v. *McCame,* 2 Neb. 276 ; *Cross* v. *Noble,* 67 Penn. St. 74, 217 ; *Lewis* v. *McMillen,* 31 Barb. 395 ; *Lowry* v. *Hurd,* 7 Minn. 356 ; *Barnes's Appeal,* 46 Penn. 350 ; *Trumbo* v. *Lockridge,* 4 Bush. 415 ; *Coomer* v. *Haley,* 57 Me. 347 ; *Ackerly* v. *Vilas,* 15 Wis. 401 ; *Mell* v. *Mooney,* 30 Ga. 413. It is no reply to say that the defendants have a remedy against the company's

Darling et al. *v.* Osborne et als.

grantor. They have no such remedy. The covenant of seisin does not run with the land. 3 Washb. Real Prop. 382, and Vermont cases cited.

The defendants are entitled to an allowance by reason of the deficiency in lots No. 73 and 76. If the vendor, without actual knowledge, stated the size of the lots to be one hundred acres or more, he was guilty of a fraud in passing off his want of knowledge, or his belief, as actual knowledge. *Cabot* v. *Christie*, 42 Vt. 121 ; *Twitchell* v. *Bridge*, 42 Vt. 72 ; *Brooks* v. *Riding*, 46 Ind. 15. If the parties acted under a mutual mistake and misunderstanding as to the size of the lots, the deficiency is so great that equity requires its correction. *Cabot* v. *Christie, supra ; Couse* v. *Boyles*, 3 Green, Ch. 212 ; *Blessing* v. *Beattie*, 1 Rob. Va. 287 ; *Davis* v. *Sabita*, 63 Penn. St. 90 ; *Sweezey* v. *Collins*, 36 Iowa, 589 ; *Howell* v. *Hill*, 19 Ark. 102 ; *Nichols* v. *Cooper*, 2 W. Va. 347. If the vendor had good reason to believe that the lots were small, and misrepresented the facts, there is actual and actionable fraud. *Whitton* v. *Goddard*, 36 Vt. 731 ; *Kelley* v. *Pember*, 35 Vt. 185 ; *Harlow* v. *Green*, 34 Vt. 382 ; *Allen* v. *Shackelton*, 14 Ohio St. 145 ; *Duvals* v. *Ross*, 2 Mumf. 290 ; *Anthony* v. *Oldacre*, 4 Cal. 489 ; *Cravens* v. *Kiser*, 4 Ind. 512 ; *James* v. *Elliott*, 44 Ga. 237 ; *Myers* v. *Estell*, 47 Miss. 4 ; *Lovejoy* v. *Roberts*, 35 Texas, 605 ; *Swain* v. *Saltmarsh*, 54 N. H. 9. The above cases establish the right to make these defences in a suit to foreclose a mortgage or collect a note given for the purchase-money. No offer to rescind is necessary or proper in such case. *Myers* v. *Estell, supra ; Lovejoy* v. *Roberts, supra ; Kelley* v. *Pember; supra.*

The bill should be dismissed for want of proper parties. The new corporation should be a party. 1 Daniel Ch. Pract. 211, 216, 287 ; *Bailey* v. *Myrick*, 36 Me. 50.

The opinion of the court was delivered by

DUNTON, J. We are not satisfied, from the evidence, that the Montpelier & Wells River Railroad Company had no title to lot No. 62 at the date of their conveyance to Osborne. Although Hooper, their grantor, had no other record title to said lot than a tax title

to an undivided portion thereof, which was defective, it does not appear from the evidence but that his possessory title to the whole of said lot was sufficient to hold it as against everybody else but the original proprietor and his heirs ; and this the said railroad company acquired by their deed from him. Although an effort has been made to find the heirs of the original proprietor and acquire his title, by certain third parties, to enable them to lay claim to said lot, it is not certain that they will succeed. As Hooper is solvent and able to respond to any judgment that may be recovered against him in a suit at law, upon the covenants in his deed to said railroad company, we see no ground for equitable defence upon this branch of the case ; but in our opinion the defendants should be left to pursue such remedy, if any, as they may have at law.

Whatever negotiations were had between the defendants Osborne and Woodbury upon the one part, and French, as agent of said railroad company, upon the other, as to the side track in question, we think were merged in the written agreement* of October 14, 1873, signed by Hall as president of said railroad company ; and therefore all previous disputes in reference to building said side track were thereby compromised and settled, so that the defendants have no other rights in reference thereto than such as are given them by said agreement. And we are not satisfied from the evidence that the condition of said agreement as to the amount of lumber to be manufactured and transported annually over the railroad of said company, was complied with, so as to entitle the defendants Osborne and Woodbury to be repaid any portion of the expense of ironing and grading said side track, assuming that they have paid the whole of it.

We find from the evidence that the note in question was over-due at the time of its transfer to the orator Darling, and, assuming that it is a negotiable promissory note, it is subject to all equities and defences existing at the time of its transfer that it would be in the hands of the original payees.

The defendants claim that French, as the agent of said railroad company, overstated the quantity of land in two of the lots—Nos.

*This agreement was not furnished the Reporter.

73 and 76, at the time of their purchase by Osborne, and that he, Osborne, in making such purchase, relied upon the representations of French, who told him they were one-hundred-acre lots, but would probably overrun, as is usually the case with such wild lands.

Said lots, in the deed from the railroad company to Osborne, are described by number and a reference to the deed from Hooper to the grantors; then follows this clause : " Said lots supposed to contain one hundred acres each, more or less." While we fail to find any fraud upon the part of French, we do find that it was understood by him, that said lots were whole lots, and contained one hundred acres each, or more, and he so stated to Osborne ; and that Osborne purchased them relying upon what French told him as to the quantity of land each contained.

By the report of the master, to whom a reference was made to determine, among other things, the quantity of land in each of said lots, and how much less they were worth at the time of their purchase by Osborne than they would have been had they contained one hundred acres each, it appears that lot No. 73 contains sixty acres and four rods, and No. 76, fifty-three acres ; and at the time of said purchase, the former was worth $912.64, and the latter, $842.05, less than they would have been had they each contained one hundred acres. We therefore think that there was a mutual mistake of the parties as to the size of these lots, and that the defendants are not remediless, for the reason that, in the description of the same in the deed, it is stated that they are " supposed to contain one hundred acres each, more or less." As is well said by PENNINGTON, Chancellor, in *Couse* v. *Boyles*, 3 Green, Ch. 216, " the plain and sensible rule, as it appears to me, is this ; when land is sold as containing so many acres, ' more or less,' if the quantity, on an actual survey and estimation, either overrunning or falling short of the contents named, be small, no compensation should be recovered by either party. The words, ' more or less,' must be intended to meet such a result. But if the variance is considerable, the party sustaining the loss should be allowed for it ; and this rule should prevail when it arises from mistake only, without fraud or deception." We think Osborne

must have been influenced, to a greater or less extent, by the supposed quantity of land in these lots in making a purchase of them ; and, although the misrepresentations of French complained of were innocently made by mistake, that the defendants are equitably entitled to have the amount said two lots were worth less than they would have been at the time of their purchase, had they contained one hundred acres each, deducted from the amount of said note at its date. See *Wilcox* v. *The Iowa Wesleyan University*, 32 Iowa, 374 ; *Blessing* v. *Beattie*, 1 Rob. Va. 287 ; *Nichols* v. *Cooper*, 2 W. Va. 347 ; *Twitchell* v. *Bridge*, 42 Vt 74 ; *Couse* v. *Boyles, supra.*

It is claimed by the defendants' counsel that the new corporation formed by the bond-holders of the old Montpelier & Wells River Railroad Co. under the same name, ought to be made a party to the suit ; but it appears from the evidence that such new corporation was not formed until after this suit was commenced. Assuming that it has such an interest in the subject-matter of this litigation as to make it a necessary party had this suit been commenced after its organization, it will be bound and concluded by the decree in this cause without being brought in as a party. It is a familiar principle of law that parties acquiring an interest in the subject-matter of a suit *pendente lite*, are bound and concluded by the judgment or decree in such suit ; otherwise, litigation might be interminable. See *Cook* v. *Mancius*, 5 Johns. Ch. 89 ; *The People's Bank* v. *Hamilton Manufacturing Co.* 10 Paige, 481 ; Mitford Ch. Pl. 73.

It appearing that Sortwell, at the time of the commencement of this suit, was both an extensive holder of the bonds of said first corporation and trustee of the holders of said bonds, we cannot, therefore, see why he is not a proper party to represent the rest of the bond-holders in this suit, admitting that they are all interested in said note and mortgage to the extent claimed. If numerous, it would be impracticable to bring them all into this suit as parties. The practice in such cases is stated by PIERPOINT, J., in *Stimson* v. *Lewis*, 36 Vt. 94, as follows : " The practice is common in our courts, when the persons in interest are numerous, to allow parties plaintiff to bring a bill in behalf of themselves and

Darling et al. *v.* Osborne et als.

others interested without making such others parties, there being a sufficient number before the court to represent the rights of all. The rule seems to be the same, substantially, in regard to the defendants." Also see *Shaw* v. *Norfolk County Railroad Co.* 5 Gray, 170, and *Cheever and Hart* v. *The Rutland & Burlington Railroad Co.* (an unreported Rutland County case in pamphlet, decided at General Term, 1869.)

We find that said Montpelier & Wells River Railroad was completed, ready for business, in less than five years from the date of said note, and therefore the note, by its terms, bears annual interest from its date.

As the defendants have prevailed only upon one ground of their defence, and have been defeated as to the other two, we do not think that either party should be allowed costs after the first term this cause was entered in the Court of Chancery. The decree of the Court of Chancery is reversed, and the cause remanded, with directions to that court to enter a decree of foreclosure for the orators for $245.31, (it being the amount of said note after deducting therefrom the sum that lots 73 and 76 were worth less than they would have been had they each contained one hundred acres,) and interest annually thereon from the date of said note, with such costs only as they would have been entitled to had a decree of foreclosure been entered at the first term the suit was entered in court, without hearing.