Steven Shavell, Individually and With Raymond F. Ross, as Trustee v. John T. Thurber

John T. Thurber v. Steven Shavell, Individually and With Raymond F. Ross, as Trustee

[414 A.2d 1152]

Nos. 17-79 and 91-79

Present: Barney, C.J., Daley, Billings and Hill, JJ., and Connarn, District Judge, Specially Assigned

Opinion Filed April 8, 1980

*Evans, O'Neil & Meachem, Ltd.,* Manchester Center, for Plaintiffs.

*Crispe & Crispe,* Brattleboro, for Defendant.

Billings, J. This appeal arises from two actions involving the sale of a parcel of land in the towns of Grafton and Rockingham on June 2, 1969, by the appellee, Thurber, to the appellants, Ross, Shavell, and others. The appellants commenced the first action in September, 1976, seeking a rescission or reformation of the sales agreement between the parties or a set-off against the amounts owed by them to the appellee on a note secured by a seller's mortgage on the grounds of mutual mistake, failure of consideration and fraud in the inducement. The appellee commenced an action of foreclosure on the mortgage in April, 1978, and the two actions were thereafter consolidated below. The court below dismissed the appellants' cause and issued a decree of foreclosure after hearing on November 29, 1979, from which order and decree the appellants appealed.

In 1968, the appellants and several other out-of-state persons sought to obtain investment property in Vermont. To accomplish this they contacted a real estate agent named Waite of the firm of Trask and Waite. The appellee, also a real estate agent, obtained title to the land in question in 1967 from an individual who represented that it covered about 180 acres, although the deed received by the appellee was silent as to acreage. Shortly after the appellee acquired the property, he offered it for sale. Upon learning of this offer, Trask obtained from the appellee permission to list the property for sale and acquired a brokerage commission agreement from him. Trask thereupon notified the appellants that he had located investment property and became an additional investor in the acquisition venture.

In January, 1969, Waite and the appellee executed a document styled a "deposit receipt and sales agreement" for the purchase by the appellants of 165 acres in Grafton and 15 acres in Rockingham, the closing to have been held in February, 1969. The instrument also bears what purports to be the signature of appellant Shavell, but he denies execution. The instrument also provided for payment by the appellee of a brokerage commission, which Waite later appears to have received.

The out-of-state investors relied upon Trask as their agent and fellow investor to oversee the purchase. Subsequent to the contract's execution, Trask contacted a surveyor to ex-

amine the property, and in February, 1969, the surveyor informed him by letter that he was experiencing difficulty locating the property in Rockingham. Later, by another letter, the surveyor advised him that the Rockingham tract consisted of only two acres and that the boundaries of the Grafton tract were undefined. Trask forwarded this information to his associates. During this same period, the surveyor talked by telephone with Trask on three to five occasions, and indicated that there was a significant shrinkage in acreage advising the prospective buyers to "drop it." Thereafter, the appellee and Trask, together with Waite, went to the property where the appellee pointed out the boundaries. Trask and Waite marked the boundaries as the parties walked them.

It is undisputed that the boundaries as marked were correct, and this was the land actually acquired by the investors by a deed executed and mortgaged back to the appellee in the summer of 1969. This deed made no reference to the amount of acreage. However, in 1975, the appellants, while attempting to sell the land, obtained from another surveyor a survey of the marked boundaries which revealed that the parcel actually contained 71.3 acres of land, not 180 acres.

██ A contract for the sale of land entered into under a mutual mistake regarding a material fact affecting the subject matter and relied upon may be avoided by the injured party. *Enequist* v. *Bemis,* 115 Vt. 209, 212, 55 A.2d 617, 619 (1947). If the disparity between the actual and estimated quantity of land was unreasonable and was relied upon by mutual mistake, the injured party is entitled to relief, *Enequist* v. *Bemis, supra; Darling* v. *Osborne,* 51 Vt. 148, 157 (1878), which may be by way of rescission. *Moonves* v. *Hill,* 134 Vt. 352, 360 A.2d 59 (1976).

██ The record before us shows that the appellants did not rely upon the representation that the tract consisted of 180 acres of land. Not only did the deeds not indicate any specific acreage, but Trask, who was one of the purchasers acting as agent for the others, had actually walked and marked the boundaries conveyed. Furthermore, although a surveyor had on several occasions, both orally and in writing, advised Trask who informed the other purchasers of the shortage of acreage, Waite indicated in writing that his "client" recognized the

problem but was willing to complete the transaction if the seller could locate all of the boundaries. Under the facts here, not only is there no mutual mistake of fact relied upon by the injured party, but the buyers entered the transaction knowingly. They cannot now be heard to complain. *Enequist* v. *Bemis, supra,* 115 Vt. at 213, 55 A.2d at 619. This fact also disposes of the appellants' claims of failure of consideration, *Darling* v. *Osborne, supra,* 51 Vt. at 157–58, and fraud, *Bardill Land & Lumber, Inc.* v. *Davis,* 135 Vt. 81, 82, 370 A.2d 212, 213 (1977) ; *Enequist* v. *Bemis, supra,* 115 Vt. at 214, 55 A.2d at 620.

*Affirmed.*