745 P.2d 1076

Norris Andrew THIEME and Katherine Lynn Thieme, husband and wife, Plaintiffs–Appellants–Cross-respondents,

v.

Richard W. WORST and Rebecca B. Worst, husband and wife, and John Tolk and Interstate Realty, Defendants–Respondents–Cross-appellants.

No. 16054.

Court of Appeals of Idaho.

Oct. 29, 1987.

Robin L. Henrie of Glenn & Henrie, Twin Falls, for plaintiffs-appellants-cross-respondents.

Jacqueline S. Wakefield and Kevin F. Trainor of Doerr & Trainor, Twin Falls, for defendants-respondents-cross-appellants, Worsts.

John S. Ritchie of Coleman, McIntyre & Ritchie, Twin Falls, for defendants-respondents-cross-appellants, John Tolk and Interstate Realty.

## SUBSTITUTE OPINION

Upon denial of petition for rehearing.

This opinion supersedes the Court's prior opinion issued June 1, 1987.

SWANSTROM, Judge.

The buyers in a land sale contract, Norris and Katherine Thieme, brought this action for rescission of the contract, for damages and for attorney fees. They sued the sellers, Richard and Rebecca Worst, and a real estate broker, John Tolk, alleging misrepresentation of the availability of irrigation water. The Worsts and the broker cross-claimed against each other. The district court, finding a mutual mistake of fact regarding the delivery of water to the property, "reformed" the land sale contract by requiring the Worsts to provide a system for delivery of water to the property and granted damages to the Thiemes. The Thiemes' complaint as against the broker was dismissed by the trial court. Both the broker and the Worsts were denied recovery under their respective cross-claims. The Thiemes have appealed and the Worsts and the broker have cross-appealed. We affirm in part, vacate in part and remand for further proceedings.

On appeal, the Thiemes have raised several issues, all relating to whether the trial court erred in: (1) granting the remedy of "reformation" based on mutual mistake rather than granting rescission for the alleged misrepresentations of the sellers and their agents; (2) failing to award damages to the buyers for costs they expended in starting construction of a house on the property; and (3) failing to find the broker jointly and severally liable with the Worsts. The Worsts raise additional issues on cross-appeal, asserting that the trial court erred in finding that: (1) a mutual mistake of fact existed; and (2) the broker was acting, at least in a limited way, as the agent of the Worsts. All parties—the Thiemes, the Worsts and the broker—assert that the trial court erred in not granting attorney fees at trial and all parties request attorney fees on appeal.

The pertinent facts are as follows. In 1977, the Worsts acquired a five-acre parcel of land on the rim of the Snake River Canyon in Twin Falls County, Idaho, intending to build a home there. They later decided not to build on the site. In 1982, they listed the parcel for sale with Irwin Realty and included the property in a multiple listing service. The listing described the land as being five acres, together with seven shares of Twin Falls Canal Company water. Another real estate broker, John Tolk, who worked for Interstate Realty, learned that the Thiemes were looking for a home building site. He contacted the Thiemes and offered to show them several pieces of property. The Thiemes indicated to Tolk that they were interested in property for the purpose of building a home and that they desired irrigation water on the property in order to pasture a few animals and raise a garden.

Tolk twice accompanied Norris Thieme to the Worsts' property. The northern boundary of the property is the high rim of the

Snake River Canyon and the southern boundary adjoins a county road. Thieme viewed the property and observed a system of ditches. He also observed a culvert under the county road. The culvert ran from the southeast corner of the property to a neighbor's field on the south side of the county road. The culvert led to an open ditch running along the road in the neighbor's field. Although the Thiemes did not know it at the time, this ditch had been used in the past to convey water from a headgate of the Twin Falls Canal Company to the five-acre parcel. The slope of the land is such that the water delivered to the southeast corner of the parcel could be made to flow through ditches either to the west or north to the rim of the canyon. After viewing the property, the Thiemes assumed that irrigation water could be delivered to the southeast corner of the property. From this point the Thiemes believed that the property could be irrigated simply by gravity flow through existing ditches.

The Thiemes decided to purchase the land in March, 1983, without ever having any direct contact with the Worsts or with Irwin Realty, the listing broker. The Thiemes and the Worsts signed a sale agreement stating that the land was sold "together with 7 shares of Twin Falls Canal Co. water." The Thiemes paid cash for the property, receiving a deed and a certificate for the water shares. After the purchase, the Thiemes planted a garden. They allowed a third party to cultivate the land and to plant wheat. The Thiemes also began construction of a house on the property, completing excavation of the basement and laying a foundation.

In the spring of 1983, the Thiemes discovered that there was a cement barrier in front of the headgate, obstructing the delivery of water into the ditch which had previously conveyed water to the parcel. All parties were unaware of this obstruction at the time of the purchase. The Thiemes made several attempts to obtain delivery of the water to the property. The neighboring farmer told the Thiemes that the ditch across his property had not been used in at least five years and that he considered it abandoned. He allegedly refused to give the Thiemes permission to use the ditch. Evidence presented at trial indicated that the ditch had not been used since 1977. Through their inquiries the Thiemes became aware of some practical and legal difficulties in obtaining irrigation water from alternative sources.

The Thiemes ceased construction on the house and filled in the excavation. On September 22, 1983, the Thiemes sent a letter to the Worsts stating they were rescinding the purchase because of "fraudulent nondisclosure" that the Worsts had abandoned the easement for conveying water to the property. When no response was received, the Thiemes filed this action in November, 1983, seeking a rescission of the sale, together with damages and attorney fees. A trial was held without a jury. The court determined there was no fraud or actionable misrepresentation. The court did find that when the sale took place both parties mistakenly believed the shares of water could be delivered to the southeast corner of the property. The court "reformed" the contract as if the parties had understood and agreed that the water would be deliverable to the southeast corner of the property when requested. The court held that under the parties' agreement, as "reformed," the Worsts had breached their contractual duty to provide the water. Nevertheless, the court refused to grant rescission, the relief the Thiemes' had requested. Rather, the court held that the Worsts should be required to specifically perform the "reformed" contract by providing a permanent delivery system that would again conduct the water to the southeast corner of the Thiemes' property. The court awarded damages of $151.53 for expenses the Thiemes had incurred in planting the garden in 1983. The court awarded no damages in connection with the aborted home construction. The Thiemes were not satisfied with the relief granted and they initiated this appeal.

I

▮ We first address whether the evidence supports the trial court's conclusion that a mutual mistake of fact occurred in

the formation of the contract. The trial court found that both parties mistakenly thought irrigation water could be delivered to the high corner of the property, when needed, at no additional cost to the Thiemes except for the canal company charges. Generally, a "mistake is an unintentional act or omission arising from ignorance, surprise, or misplaced confidence." *Bailey v. Ewing*, 105 Idaho 636, 639, 671 P.2d 1099, 1102 (Ct.App.1983). A mutual mistake occurs when both parties share a misconception about a vital fact upon which they based their bargain at the time of contracting. *Id.*

It is undisputed that the Thiemes believed the property could be irrigated by gravity flow. The Thiemes assumed that the water would flow to the southeast corner of the property from the ditch on the neighboring landowner's property. However, the Worsts contend that any mistake was unilateral, not mutual. More specifically, the Worsts assert they were not suffering under a mistaken belief that water was deliverable to the southeastern corner of the property. The Worsts argue they were ignorant, rather than mistaken, as to the location of the water source and entry point onto the property.

Our Supreme Court in *Sorenson v. Adams*, 98 Idaho 708, 715, 571 P.2d 769, 776 (1977), said: "An owner is presumed to know the boundaries of his own land, the quantity of his acreage, and the amount of water available...." The Worsts testified that when they owned the property they never farmed it or personally used the shares of water. The Worsts also testified that they did not inspect the ditches and had no idea where the water would be delivered to the property or how the property could be irrigated. They were aware that water could be "lost" if not used on the property for some period of time. Accordingly, in 1980, they contacted Robert Blass who owned and farmed the adjacent property to the east. In 1980 and again in 1981, Blass agreed to farm the parcel. Richard Worst testified that Blass "would farm the land, run the water on it, and pay us for it." Worst further testified that he assumed Blass was going to use their wa-

ter shares. In fact, during both years Blass irrigated the property, he utilized waste water from his own property rather than the seven shares of water from the canal company. Worst testified that he did not have any reason to doubt, when the Thiemes purchased the property, that they could use the water shares to irrigate the property. He said that had he known a cement barrier obstructed the delivery of water he would have informed the Thiemes of the obstruction.

Thus, the evidence shows that the Worsts believed Blass used their water on the property in 1980 and in 1981 when he farmed the tract. The court found that when the Worsts listed the property and sold it to the Thiemes, the Worsts believed the water was deliverable to the parcel through an existing system. The "existing system" previously had delivered the water to the southeastern corner of the property. Substantial evidence supports the court's finding that the Worsts did have a mistaken belief. The finding will not be disturbed on appeal.

■ Similarly, the Thiemes' view of the property and its ditches, coupled with the knowledge that it was being sold with seven shares of water, led them to believe the water was available through the existing system at the southeastern corner of the tract. Because the Thiemes intended to pasture animals and grow a garden, the ready availability of water was a material consideration. The trial court found that the Thiemes would not have entered into the contract had they been aware of the water difficulties. Also, there was evidence showing that, during negotiations conducted through the brokers, Richard Worst rejected one offer made by the Thiemes and held out for a higher figure, contending that the water shares were worth the difference. Thus, we uphold the district judge's ruling that there was a mutual mistake. Both parties were mistaken "at the time [the] contract was made as to a basic assumption on which the contract was made...." RESTATEMENT (SECOND) OF CONTRACTS § 152 (1979) (hereinafter cited as *Restatement*).

The Worsts have also argued that if there was a mutual mistake, the Thiemes should bear the risk of the mistake because they acted upon incomplete information derived from their own view of the premises and not from any representations made by the Worsts. However, as the findings of the district judge and the evidence show, the Thiemes' view of the property would logically confirm their belief that seven shares of water were deliverable through an existing irrigation system. We are not persuaded that the Thiemes should bear the risk of the mistake under the rule stated in § 154 of the *Restatement.* Accordingly, we must determine whether the trial court was correct in denying the remedy of rescission, in favor of "reformation" of the contract of sale.

## II

As noted in § 152 of the *Restatement,* where the mistake has a material effect on the agreed exchange of performances, the contract is voidable. The availability of water has been held basic to the lease or purchase of real property so that when water is not deliverable, rescission of the transaction is an available remedy. *See, e.g., Fowler v. Uezzell,* 94 Idaho 951, 500 P.2d 852 (1972) (lease of farm ground); *Blythe v. Coney,* 228 Ark. 824, 310 S.W.2d 485 (1958) (mutual mistake over availability of water resulted in rescission of contract to purchase home). However, rescission is not the exclusive remedy for mutual mistake; a court may consider other equitable remedies in fashioning a just result. Indeed, the avoidance rule of *Restatement* § 152 expressly recognizes that the materiality of the parties' mistake may be alleviated by other equitable relief. Correspondingly, § 158(2) of the *Restatement* acknowledges the power of an equity court to eliminate the effect of mistake by supplying a new term or otherwise modifying the agreement as justice requires, thus protecting the parties' reliance interests.

In devising an equitable remedy for the mistake here, the trial judge stopped short of allowing rescission. The judge ordered "reformation" of the real estate purchase and sale agreement to create a duty on the Worsts to provide a water system for the land as contemplated by the parties at the time of contracting. The judge's use of the term "reformation" was incorrect. Reformation is an equitable remedy available in a limited situation when the parties, having reached an agreement, failed to express it correctly in the writing. *Restatement* § 155. It is apparent that the judge here actually was reshaping the contract duties to achieve a just result, consistent with the parties' intent.

In our view, the trial judge fashioned the correct remedy. The Worsts, apparently, are willing to perform the duty of providing a permanent water system for the Thiemes. This is not a situation of impossibility or impracticability of performance. Neither party has committed fraud or misrepresentation. They both simply suffer from a common mistake of fact. The duty required of the Worsts is reasonable. Its performance will conform to the intent held by the parties at the time of contracting and will avoid the drastic remedy of rescission. Rescission, or avoidance, by the Thiemes would result in an injustice in this case because the Worsts, apparently, are willing to perform their duty, thus alleviating the effect of the mistake. Furthermore, the result here protects the parties' reliance interests existing at the time the sale agreement was entered into. The Thiemes, however, contend that the Worsts are unable to perform their duty. Therefore, we believe this case should be remanded to allow the trial court to reconsider its remedy in light of any circumstances occurring since its previous order.

We offer the following guidance to the trial court. We uphold the trial court's order requiring the Worsts to provide a permanent water system capable of delivering water to the southeast corner of the land, comparable to the system the parties believed existed at the time the land sale agreement was made. We agree with the trial court that the Worsts must obtain any necessary, permanent easements for the water system; mere licenses will not suf-

fice. We further agree that the Thiemes should not have to await the outcome of any new litigation between the Worsts and third parties over easements for the water system. We direct the trial court to establish specific deadlines for commencing and completing the Worsts' duty. The deadlines should reflect an appropriate regard for the parties' agreement that time is of the essence. Should the Worsts choose not to perform their duty as required, or if they fail to timely meet the trial court's deadlines, rescission is to be promptly ordered. Rescission remains a viable remedy and, if granted, the trial court in its discretion may also grant appropriate restitutionary relief to the parties. As long as the trial court properly exercises its discretion, within permitted bounds, we will defer to that court's discretionary authority to determine the appropriate amount of restitutionary relief as the circumstances and justice require. *See, e.g., Lewiston Pre–Mix Concrete, Inc. v. Rohde*, 110 Idaho 640, 718 P.2d 551 (Ct.App.1985).

### III

The Thiemes next contend that the trial judge erred in dismissing their claims against John Tolk, the broker who showed them the property and helped negotiate its purchase. The Thiemes assert that the broker should have been held jointly and severally liable with the Worsts, contending that he should have exercised greater care in making oral representations concerning the property. *Perkins v. Thorpe*, 106 Idaho 138, 676 P.2d 52 (Ct.App.1984), is cited for the proposition that a real estate broker has a fiduciary duty to his client. Breach of that duty—by intention or through negligence—may result in liability for damages. However, the trial court found that the broker made "no actionable misrepresentations."

After a careful review of the record, we agree with the trial court's finding. The only relevant representations made by the broker to the Thiemes were that irrigation water *could* flow to the north and to the west due to the sloping of the land. This was a topographically accurate obser-

vation made while the broker viewed the property with Mr. Thieme. It did not misrepresent the source of the water. There was also testimony indicating that the broker inadvertently might have shown the Thiemes an outdated multiple listing describing the property as "presently being farmed." Again, the fact that the land had been farmed was undisputedly accurate. There was no specific representation regarding the source of water used in the farming. Although Thieme may have made an understandable assumption in this regard, it does not necessarily follow that a misrepresentation occurred. We decline to disturb the trial judge's finding, after hearing all the evidence, that the Thiemes failed to prove a breach of the broker's duty.

### IV

On cross-appeal, the Worsts contend that their only agent in this transaction was the listing broker, Irwin Realty. They assert that the court erred in ruling that the selling broker Tolk, with whom they had no direct contact, was their agent also. We need not address the issue of agency because we uphold the trial court's ruling that Tolk made no material misrepresentations of fact.

### V

Finally, we address the issue of attorney fees. All parties assert that the court erred in denying an award of attorney fees at trial and they request attorney fees on appeal. The court denied attorney fees to the Thiemes and to the Worsts, finding that neither party prevailed. The broker Tolk was denied fees because the court found that the action was not brought against him frivolously or unreasonably. We will examine each claim to fees in turn.

The Thiemes claim entitlement to fees under I.C. § 12–121. This section allows fees to be awarded to a prevailing party. However, the prevailing party must show that the losing party brought, pursued or defended the action frivolously, unreasonably or without foundation. I.R.C.P. 54(e)(1). We cannot say that the trial court abused its discretion in denying an

award of fees at trial. Further, we do not find that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation. *See Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 591 P.2d 1078 (1979). Therefore, we decline to award attorney fees on appeal to the Thiemes under I.C. § 12–121.

 The Thiemes also assert an entitlement to attorney fees both at trial and on appeal based on a clause in the sale contract. The clause states: "In the event of default by either of the parties in their performance of the terms and conditions of this agreement, the defaulting party agrees to pay all attorney fees and costs incurred by the non-defaulting party." The Thiemes contend that the trial court erred in denying fees at trial on the ground that no party prevailed. They argue that, to be entitled to fees under the contract, it was only necessary for them to show that the Worsts were the "defaulting party." We are not persuaded. The alleged "default" on the part of the Worsts is the lack of water that both parties believed was available. This "default" occurred because of a basic mistake, not because the Worsts were unwilling to perform. Thus, we cannot conclude that the Worsts have "defaulted" in their performance. It remains to be seen whether the Worsts will perform or not. If on remand the Worsts fail to perform, then rescission would be granted and the Thiemes would be entitled to attorney fees. *See Ayotte v. Redmon*, 110 Idaho 726, 718 P.2d 1164 (1986). Therefore, we conditionally deny the Thiemes request for attorney fees. We allow the trial court to award attorney fees on remand should the Thiemes eventually prevail. *E.g., Paloukos v. Intermountain Chevrolet Co.*, 99 Idaho 740, 588 P.2d 939 (1978).

■ The Worsts' entitlement to fees either for the trial or for this appeal lies solely under § 12–121. However, the trial court correctly found that they were not prevailing parties. Neither did they prevail in this appeal. The broker's foundation for attorney fees is also I.C. § 12–121. The trial court denied an award of fees finding that the action against the broker was not brought frivolously or without foundation. We uphold that ruling. We also deny fees to the broker on appeal. *Minich v. Gem State Developers, Inc., supra.*

In summary, we affirm the judgment in part, vacate it in part, and remand the case for further proceedings consistent with this opinion. The costs of respondents Tolk and Interstate Realty are assessed against the Thiemes. No costs are awarded to the Thiemes or to the Worsts. No attorney fees are awarded.

WALTERS, C.J., and BURNETT, J., concur.