## Paradise Restaurant, Inc. v. Somerset Enterprises, Inc.

[671 A.2d 1258]

No. 95-085

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed December 8, 1995

*Peter H. Banse* of *Banse & Banse, P.C.*, Manchester, for Plaintiff-Appellee.

*Robert E. Woolmington* of *Witten, Saltonstall, Woolmington, Bongartz & Campbell, P.C.*, Bennington, for Defendant-Appellant.

**Johnson, J.** Defendant purchased a restaurant in Bennington from plaintiff for cash and a promissory note, and appeals from an order of the Bennington Superior Court granting plaintiff's foreclosure petition on the purchase-money mortgage securing the note. Pursuant to a stipulation of the parties, the court granted defendant's motion for permission to appeal. We reverse.

The purchase and sale transaction closed on September 20, 1988. The total purchase price for the restaurant was $750,000, defendant paying $250,000 in cash and financing the balance with a $500,000 promissory note secured by a first mortgage on the property. The note provided for

> interest at the rate of nine and half (9 ½) per annum payable as follows:
>
> A) No payments due from September 19, 1988 to July 1, 1989.
>
> B) $3,132.69 including principal and interest each month payable on the first of each month from July 1, 1989 to June 30, 1991.

C) $5,224.95 including principal and interest each month payable on the first of the month from July 1, 1991 to June 30, 2004.

The note did not contain any provision for a balloon payment, i.e., a lump-sum payment of outstanding principal, at the end of the term.

Defendant made timely payments under the note until early 1993, when the parties engaged in a dispute relating to parking rights on an adjacent parcel owned by Paradise and leased to its subsidiary. Paradise claimed a breach when defendant's February 1, 1993 check was returned for insufficient funds, and brought the present foreclosure action. Defendant answered that sufficient funds to cover the check were deposited promptly after the check was dishonored and there was no default, and that the foreclosure had been brought in bad faith, in retaliation for defendant's action against plaintiff's subsidiary.

After plaintiff's motion for summary judgment was denied, defendant moved for a determination of the full amount of principal and interest then due, intending to pay the balance in full upon that determination. The sole issue before the court was the amount due under the note, and there was agreement that as of December 31, 1993 defendant had paid plaintiff $231,933.06 on the note.

It was also undisputed that both parties had allocated principal and interest as to each payment in exactly the same manner on their respective tax returns, using the straight-line method of accounting, under which the total payments to be made during the term of the loan were totalled, and the principal amount subtracted. The balance remaining was the interest to be paid over the term, which figure was divided by the number of years in the term. The result yielded both the amount and rate of annual interest, which would remain constant throughout the term. Plaintiff's accountant testified that it was he who suggested the straight-line method of booking the loan payments. As of December 31, 1993, both parties reported the same amount of remaining principal on the note to the Internal Revenue Service, $385,256.83.

At trial, plaintiff's accountant testified that he should have amortized the note at an annual rate of 9.5% using the declining-balance method and that under this approach the total amount due as of June 30, 1994 was $535,276.11, rather than $361,600.75. The accuracy of plaintiff's accountant's calculations under the declining-balance method was not disputed. It was also undisputed that the declining-

balance method did not comport with the payment schedule set forth in the note, and left a significant balloon payment at maturity.

Defendant did not dispute that the straight-line method actually followed by the parties until 1993 yielded an interest rate of about 4.5%, rather than the 9.5% rate set forth on the face of the note. Nevertheless, defendant urged the court to adopt this reading of the note in establishing the total amount due, arguing that plaintiff was estopped to repudiate its own adoption of the straight-line accounting method at all times since the closing.

The court found that it was not possible to give effect to all of the note terms without rendering at least one of the terms inconsistent, but added that "[t]he 9½% interest rate, however, is unambiguous and must clearly reflect the intent of the parties. The straight line calculation results in interest at a rate of approximately 4½%. This is significantly lower than what the parties intended at the time of contracting." The court concluded that the declining-balance methodology most closely reflected the parties' intentions and that the interest rate of 9.5% stated in the note should govern over the payment schedule stated therein. The court rejected defendant's estoppel argument, concluding that the facts did not square with the elements we described as necessary for estoppel in *Greenmoss Builders, Inc. v. King*, 155 Vt. 1, 7, 580 A.2d 971, 974-75 (1990). The court adopted plaintiff's total of $535,276.11,[1] the calculation of which is not in dispute, assuming use of a declining-balance approach. The present appeal followed, by stipulation of the parties and permission of the court.

The parties agree that the promissory note was internally inconsistent, since the stated interest rate of 9.5% could not be reconciled with the payment schedule set forth in the note.[2] Defendant argues that the court erred in failing to resolve the inconsistency by following

---

[1] For reasons that are not clear from the opinion and order below, the trial court, after adopting plaintiff's methodology, found the amount due on the note to be only $531,266.09, rather than $535,276.11.

[2] The error may have resulted from an initial computation of an amortization schedule for a fifteen-year loan of $500,000 at 9.5% simple interest, commencing on July 1, 1989 and running to July 1, 2004, which results in a monthly payment of $5,224.95 — the figure set forth in paragraph C of the note — to commence on July 1, 1991. Had that monthly payment been made at and after August 1, 1989, the loan would have been fully paid out, with 9.5% interest, and with no "balloon," on July 1, 2004.

It is plausible, though not verified by evidence in the record, that the parties began their negotiations with a starting and uniform $5,224.95 monthly payment in mind, later modifying the note to ease defendant's debt burden in the restaurant's startup years.

the "uniform practical construction" of the terms, which the parties themselves had adopted in employing the straight-line accounting of interest and amortization over nearly five years, and that the court erred in rejecting defendant's estoppel argument.

## I.

■ Defendant contends that the court erred in failing to adopt the "uniform practical construction" of the parties during the period of performance, citing 3 Corbin on Contracts § 558, at 249 (1960) to the effect that a court is justified in adopting the practical interpretation that the parties themselves have given the contract. The treatise, however, is clear that the principle applies only where there is an ambiguity in the language of an agreement. Corbin states in text immediately preceding defendant's quotation that "[t]he process of practical interpretation and application, however, is not regarded by the parties as a remaking of the contract; nor do the courts so regard it." *Id.*

Cases relying on the principles underlying § 558 make the same point. See, e.g., *Teamsters Indus. Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc.*, 989 F.2d 132, 137 (3d Cir. 1993) (pension fund's failure to demand contributions on behalf of probationary employees relevant where collective bargaining agreement ambiguous as to whether such contributions were required); *Overseas Dev. Disc Corp. v. Sangamo Constr. Co.*, 686 F.2d 498, 504 n.10 (7th Cir. 1982) (subsequent conduct of parties relevant where contract ambiguous as to whether certain rights were delegable); *Chapman College v. Wagener*, 291 P.2d 445, 448 (Cal. 1955) (where promissory notes departed from language of contract, subsequent conduct of parties was relevant to proper interpretation).

The note in the present case is not ambiguous. It is defective and incapable of consistent interpretation. The contract might have been deemed implicitly modified by subsequent conduct. See *Globe Transp. & Trading (U.K.) Ltd. v. Guthrie Latex, Inc.*, 722 F. Supp. 40, 44 (S.D.N.Y. 1989) (parties' actions impliedly modified contract to endow third member of arbitration panel with full rights). But defendant did not argue modification, and in any case, the record indicates that the

Even if this speculation were proven fact, it would not answer the question of whether the parties thereby tacitly assented to a lower effective interest rate than 9.5%, or rather intended some other means of making up for the lower starting rate, either during the out years of the note or with a balloon payment at its maturity.

straight-line accounting of loan payment proceeds by both parties was a routine adopted by fiscal officers prior to learning of the defect in the note. Cf. *In re Jansen v. United States*, 344 F.2d 363, 369 (Ct. Cl. 1965) (court rejected "practical construction" evidence where double payments apparently made routinely by government finance office).[3]

## II.

Defendant next argues that the court erred in concluding that the 9.5% interest rate "must clearly reflect the intent of the parties" and that "[t]he parties clearly agreed to lend and borrow the $500,000 at a 9 ½% interest rate." We agree. There is no evidence in the record tending to resolve the irreconcilable conflict in the wording of the promissory note one way or the other. The court acknowledges that the only relevant document is the note itself, which both parties agreed at trial was defective and could not be enforced in accordance with all of its terms.

Although, as plaintiff argues, the parties did agree on a 9.5% interest rate, they also agreed that the amount due would be paid by the borrower's adherence to a payment schedule set forth on the face of the instrument as clearly as was the interest rate. Put another way, the parties appear to have agreed that a $500,000 note could be fully paid at an interest rate of 9.5% via the payment schedule set forth on the note — an illusory agreement, incapable of performance since its premise was contrary to fact. The court could not rely exclusively on the stated interest rate on grounds that it was "unambiguous," since the payment schedule was equally unambiguous. Nor does plaintiff call our attention to any rule of construction that favors a stated interest rate over a payment schedule.

The court's conclusion that the parties "clearly agreed" to the 9.5% interest rate, or, more precisely, that the agreement on a 9.5% interest rate was the only clear understanding expressed by the parties in the note, was not supported by the record and cannot stand. See *Marble Bank v. Heaton*, 160 Vt. 188, 191, 624 A.2d 365, 367 (1993) (court had no factual basis on which to rule that defendant must pay judgment held by bank against defendant under trustee process).

---

[3] Defendant also argues that the court erred in declining to adopt its estoppel theory, which closely parallels the practical construction argument. The court made findings as to all of the factors in *Greenmoss Builders, Inc. v. King*, 151 Vt. 1, 7, 580 A.2d 971, 974-75 (1990), and defendant has not demonstrated that the court's findings were clearly erroneous as to any of the *Greenmoss* factors.

## III.

As the matter must be remanded for further proceedings to determine the correct payout amount, further discussion is appropriate to guide the court on remand. See *Town of Sherburne v. Carpenter*, 155 Vt. 126, 131, 582 A.2d 145, 148-49 (1990).

It is undisputed that the note is a defective instrument, that it cannot be interpreted by giving effect to all of its terms, and that the mistake in executing the instrument was mutual. The usual remedies applied to a mistake in contract formation are rescission and reformation. Reformation is inappropriate because a prerequisite to reformation is evidence of the terms of the actual agreement, which the writing in question failed to record. See *Burlington Savings Bank v. Rafoul*, 124 Vt. 427, 429, 209 A.2d 738, 740 (1965) (noting that party seeking reformation has burden of establishing beyond reasonable doubt the true agreement to which contract is to be reformed). Here, the problem is that we cannot discern the actual agreement of the parties.

■ Rescission is impractical and would yield an inequitable result. Defendant has operated the restaurant as its apparent owner since 1988. If the sale transaction were treated as a nullity, the economic and other issues raised by attempting to put the parties in status quo ante would make the question of the proper interest rate on the note executed by the parties seem simple in comparison. If the restaurant has significantly increased in value since the sale, then rescission would tend to favor the seller; if the restaurant has declined in value, or was purchased at a price that in retrospect was higher than its fair market value, the rescission would tend to favor the buyer, who in effect enjoyed a relatively risk-free venture. See *330 P.B. Corp. v. Murphy*, 532 So. 2d 1, 3 (Fla. Dist. Ct. App. 1988) (rescission not appropriate where parties to mortgage financing condominium sales could not be returned to original positions).

Modern courts and commentators have taken a broader view of other remedies in cases where a purported agreement does not reflect a meeting of the minds. One commentator has argued that courts should resolve such disputes in the way most likely to enforce the parties' expectations. 3 Corbin on Contracts § 536(B), at 42 (1994 Supp.); see also Restatement (Second) of Contracts § 158 cmt. c (1981) (if mistake provisions of Restatement "will not suffice to avoid injustice, the court may supply a term just as it may in cases of impracticality of performance and frustration of purpose").

In *Thieme v. Worst*, 745 P.2d 1076 (Idaho Ct. App. 1987), buyers sought rescission against sellers of property conveyed under the mutually mistaken belief that irrigation water was available. The trial court declined to rescind but required sellers to provide a water delivery system, and granted damages to purchasers. In affirming the trial judge's decision, the court stated:

> [R]escission is not the exclusive remedy for mutual mistake; a court may consider other equitable remedies in fashioning a just result. Indeed, the avoidance rule of *Restatement* § 152 expressly recognizes that the materiality of the parties' mistake may be alleviated by other equitable relief. Correspondingly, § 158(2) of the *Restatement* acknowledges the power of an equity court to eliminate the effect of mistake by supplying a new term or otherwise modifying the agreement as justice requires, thus protecting the parties' reliance interests.

*Id.* at 1080.

Using an analogous approach in this case, the trial court on remand may use its power as an equity court to fashion an appropriate remedy. The court is not limited to calculating the balance due on the note using either the stated 9.5% interest rate or the 4.5% interest rate implied by the payment schedule. The court should determine on the basis of the record after remand what remedial approach comes closest to treating each party fairly and equitably.

*Reversed and remanded for further proceedings in accordance with this opinion.*