**Shane and Deborah Rancourt v. John and Susan Verba**

[678 A.2d 886]

No. 95-029

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed March 15, 1996

Motion for Reargument Denied May 20, 1996

---

*W. Owen Jenkins*, Essex Junction, for Plaintiffs-Appellees.

*L. Randolph Amis*, Burlington, for Defendants-Appellants.

**Allen, C.J.** Defendants sold plaintiffs a parcel of land in North Hero, which the parties subsequently learned was unsuitable for lakeshore development. Plaintiffs sued to rescind, but the court allowed defendants to elect rescission or pay damages to plaintiffs for the diminished value of the property. It awarded plaintiffs attorney's fees, but denied plaintiffs' claim for prejudgment interest and consequential damages. Both parties appealed. We reverse.

In November 1989, defendants sold a ten-acre, lakeshore lot in North Hero to plaintiffs for $115,000. Defendants knew that plaintiffs intended to build a residence on the lot in close proximity to the lakeshore. Plaintiffs prepared the lakeshore building site by adding fill, but because this site preparation was done without permits, it violated state and federal wetland regulations. The trial court found that "[a]s a practical matter, a federal permit could not be obtained to place fill on or otherwise develop this wetland building site" and that the state permits were similarly "unavailable." Plaintiffs were later ordered to remove all fill placed on the building site, which included the fill placed by them after closing and by defendants prior to closing.[1]

On learning that they could not build near the lake, plaintiffs demanded that defendants rescind the transaction, refund the purchase price, and pay consequential damages resulting from the purchase. After defendants refused, plaintiffs brought this rescission action, which is based on a claim of mutual mistake regarding the suitability of the lot for lakeshore development. In the alternative, plaintiffs requested compensatory damages.

The court found that the agreement was based upon a mutual mistake of fact resulting from "mutual, but innocent, misunderstanding." It concluded that defendants did not breach their contract with

---

[1]When defendants placed fill on the building site prior to closing, they violated only federal wetland regulations because the state wetland regulations did not become effective until February 23, 1990.

plaintiffs or their warranties of title, did not commit fraud, and did not violate Act 250.[2] The court gave defendants the option of (1) paying plaintiffs $55,000 (the difference between the $60,000 fair market value of the lot at closing and the $115,000 purchase price), plus the cost of removing the fill which defendants had placed on the building site prior to closing, or (2) rescinding the transaction and refunding the purchase price of $115,000, less the cost of removing the fill which plaintiffs had placed on the building site after closing. It awarded attorney's fees to plaintiffs under the Vermont Consumer Fraud Act, 9 V.S.A. §§ 2451-2480g.

Both parties moved for modification of the trial court's order, and the court concluded that defendants did not violate the Vermont Consumer Fraud Act. It nevertheless granted plaintiffs attorney's fees on equitable grounds. It declined to award prejudgment interest on the $55,000, concluding in its modification order that the judgment amount had not been readily ascertainable and that plaintiffs' contribution to the parties' mutual mistake barred prejudgment interest as a matter of equity. The court also declined to credit defendants with the $5,000 that plaintiffs received in settlement of a potential claim against their attorney, noting that there was no evidence that the settlement was intended to mitigate plaintiffs' financial loss from the mutual mistake.

Defendants advised the court of their election to pay the plaintiffs damages rather than rescind the transaction. Judgment was entered in plaintiffs' favor for $55,000, plus defendants' pro rated portion of the cost of removing the fill and attorney's fees.

Defendants appealed, arguing that the court should not have awarded attorney's fees and should have credited them for the $5,000 that plaintiffs received from their attorney. Plaintiffs cross-appealed the court's failure to order rescission, award prejudgment interest on the total purchase price, and award damages for other costs and expenses incurred. In the alternative, plaintiffs have cross-appealed the court's failure to award prejudgment interest on the $55,000 and failure to award consequential damages for the land gains tax assessed against the lot.

---

[2] Plaintiffs have not appealed the court's decision on these other claims.

The central issue in the case is when is rescission the proper remedy for mutual mistake.[3] Plaintiffs argue that the trial court erred when it granted a remedy other than rescission. We agree.

The usual remedies applied to mutual mistake in contract formation are rescission and reformation. *Paradise Restaurant, Inc. v. Somerset Enterprises, Inc.*, 164 Vt. 405, 411, 671 A.2d 1258, 1262 (1995). "Where a contract has been entered into under a mutual mistake of the parties regarding a material fact affecting the subject matter thereof, it may be avoided . . . at the instance of the injured party, and an action lies to recover money paid under it." *Enequist v. Bemis*, 115 Vt. 209, 212, 55 A.2d 617, 619 (1947); see also 13 Williston on Contracts § 1557, at 240 (3d ed. 1970) ("[W]here the error is in the substance of the bargain . . . rescission with restitution of whatever has been parted with is the only permissible relief . . . .").

In *Moonves v. Hill*, 134 Vt. 352, 360 A.2d 59 (1976), this Court addressed whether an abatement in the purchase price is a proper remedy for mutual mistake in a land contract. *Moonves* involved an in-gross sale of property where the trial court concluded that the buyer and seller were mutually mistaken as to the quantity of land conveyed. The trial court granted the buyer an abatement in the purchase price equal to the value of the disparity between the contract acreage and the actual acreage. This Court reversed, holding that the proper remedy for mutual mistake was rescission, not an abatement in the purchase price. *Id.* at 354, 360 A.2d at 61. In rejecting the contrary rule, which allowed a court to grant a pro tanto reduction in the purchase price, the Court said:

> In our view, this is substituting for the contract actually made by the parties a different one, which the court feels they would have made if they had known the correct quantities involved. Whatever the value of this rule when case law evolved largely from sales of rural acreage for farming purposes, or lumbering, its application loses much merit today, when access, *frontage, view, permitted uses*, and other vastly different considerations often influence the purchase price.

*Id.* (emphasis added). Although *Moonves* involved mutual mistake as to the quantity of land, the rationale behind the Court's holding is

---

[3]The court concluded that the contract "was entered into by virtue of mutual mistake," and neither party appealed that conclusion.

equally, if not more, applicable to mutual mistake as to quality of the land.

Nevertheless, we have recognized limitations on the remedy of rescission, none of which is applicable here. First, a party seeking rescission of a contract entered into by mutual mistake is not entitled to retain favorable portions of the contract and disregard the rest. *Caledonia Sand & Gravel Co. v. Joseph A. Bass Co.*, 121 Vt. 161, 165, 151 A.2d 312, 315 (1959). In essence, the injured party is given an all-or-nothing option in situations involving mutual mistake. See *Moonves*, 134 Vt. at 355, 360 A.2d at 62 ("Rescission is, of course, an option of the plaintiffs on the facts as found. It is not relief they are compelled to take; they may prefer to keep the property in question and pay the stipulated price."). The trial court here justified its equitable remedy with a citation to *Caledonia Sand & Gravel*. We fail to see how plaintiffs' request that they be returned to the status quo ante via rescission, see *Sterrett Enters., Inc. v. Yankee Chapman, Inc.*, 146 Vt. 112, 115, 499 A.2d 1152, 1154 (1985), would result in the retention of favorable portions of the contract and abandonment of unfavorable portions. *Caledonia Sand & Gravel* is inapposite.

Second, when a court finds that the party requesting rescission has assumed the risk of the mistake, rescission will be denied. See Restatement (Second) of Contracts § 154, at 402-03 (1981); *Shavell v. Thurber*, 138 Vt. 217, 219-20, 414 A.2d 1152, 1153-54 (1980) (even if court finds mutual mistake, no relief granted where buyer assumes risk of mistake by entering transaction knowingly); *Enequist*, 115 Vt. at 213, 55 A.2d at 620 ("If it is shown that the hazard of gain or loss, whatever it may be, was accepted by the parties and entered into the contract, relief will be refused."). Here, the trial court made no finding that either party assumed the risk of mistake, and neither party has appealed the lack of such finding. Recently, this Court discussed the equitable circumstances where departure from the remedy of rescission is appropriate. *Paradise*, 164 Vt. at 411, 671 A.2d at 1263. We stated:

> "[R]escission is not the exclusive remedy for mutual mistake; a court may consider other equitable remedies in fashioning a just result. Indeed, the avoidance rule of *Restatement* § 152[4] expressly recognizes that the material-

---

[4] § 152 When Mistake of Both Parties Makes a Contract Voidable

(1) Where a mistake of both parties at the time a contract was made as to a basic

ity of the parties' mistake may be alleviated by other equitable relief. Correspondingly, § 158(2)[5] of the *Restatement* acknowledges the power of an equity court to eliminate the effect of mistake by supplying a new term or otherwise modifying the agreement as justice requires, thus protecting the parties' reliance interests."

*Id.* at 412, 671 A.2d at 1263 (quoting *Thieme v. Worst*, 745 P.2d 1076, 1080 (Idaho Ct. App. 1987)). Both *Paradise* and *Thieme*, however, are distinguishable from this case.

*Paradise* involved mutual mistake regarding a promissory note, given in the sale of a business, that was internally inconsistent and incapable of performance. *Paradise*, 164 Vt. at 408, 671 A.2d at 1261. In guiding the trial court on remand, we said that rescission of the contract for the sale of the business was impractical because the defendant had been operating the business for a number of years, and the effect of the passage of time would make it very difficult to put the parties in status quo ante. *Id.* at 411, 671 A.2d at 1263. We instructed the trial court to decide on remand "what remedial approach comes closest to treating each party fairly and equitably." *Id.* at 412, 671 A.2d at 1263. Restoring the parties here to status quo ante is not as difficult as in *Paradise* because the complex business issues, such as profit and loss, customer goodwill, improvements, and tax considerations, are not implicated by this transaction. Therefore, unlike in *Paradise*, rescission is the proper remedy.

In *Thieme*, both the buyer and seller mistakenly assumed that water was available to irrigate the property. The trial court held that a mutual mistake of fact existed, but instead of granting rescission, the trial court "held that the [seller] should be required to specifically perform the 'reformed' contract by providing a permanent delivery

---

assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of mistake under the rule stated in § 154.

(2) In determining whether the mistake has a material effect on the agreed exchange of performances, account is taken of any relief by way of reformation, restitution, or otherwise.

Restatement (Second) of Contracts § 152, at 385 (1981).

[5] **§ 158 Relief Including Restitution**

(2) In any case governed by the rules stated in this Chapter, if those rules . . . will not avoid injustice, the court may grant relief on such terms as justice requires . . . .

*Id.* § 158, at 419.

system that would again conduct the water to the southeast corner of [the buyer's] property." *Thieme*, 745 P.2d at 1078. The court of appeals affirmed, but stated that "[t]he judge's use of the term 'reformation' was incorrect . . . . It is apparent that the judge here actually was reshaping the contract duties to achieve a just result, consistent with the parties' intent." *Id.* at 1080. In *Thieme*, both parties intended that the property would have irrigation water available, and the court was able to provide relief that conformed to that intent. Here, the intent of the parties has been identified by the trial court:

> Defendants marketed, intended to sell, and believed they were selling to the plaintiffs, land with a home site down at the lake end of the lot immediate to the shore. Plaintiffs were shopping for, intended to buy, and believed they were buying from the defendants, land where they could build a home on the lake end of the lot immediate to the shore.

By allowing an abatement in the purchase price rather than granting rescission, the trial court reshaped the contract contrary to its own finding regarding the parties' intent.

This case is more like *Renner v. Kehl*, 722 P.2d 262 (Ariz. 1986), on the issue of intent. In *Renner*, buyer purchased land for the sole purpose of growing jojaba, and both buyer and seller were under the mistaken assumption that the land was suitable for that purpose. The *Renner* court held that buyer was "entitled" to rescission of the contract because the amount of water on the property was "a basic assumption on which both parties made the contract" and this mutual mistake "ha[d] such a material effect on the agreed exchange of performances as to upset the very bases of the contract." *Id.* at 265. In addition, the court noted that the "failure of the parties to make a thorough investigation of the water supply prior to signing the contract does not preclude rescission where the risk of mistake was not allocated among the parties." *Id.* at 265 n.2.

Because the clear intent of plaintiffs was to purchase land suitable for lakeshore development, and because it is impossible to do so under state and federal wetland regulations, they are "entitled" to rescission. Also, as in *Renner*, the trial court did not find that the risk of mistake had been allocated to either party. In sum, although mutual mistake does not always require rescission, the facts of this case do not come within the limited circumstances where we have allowed a departure from rescission.

Plaintiffs also argue that the court erred when it denied them prejudgment interest on the $55,000 in damages and when it denied

them consequential damages for the Vermont land gains tax on the conveyance. Because we conclude that rescission is the proper remedy, we remand for a determination of whether plaintiffs are entitled to prejudgment interest with respect to the purchase price. Similarly, because plaintiffs will not face any land sale tax liability on the rescinded transaction, plaintiffs' argument regarding consequential damages is moot.

Defendants argue that the court erred in awarding attorney's fees and by failing to reduce the damages award by the $5,000 that plaintiffs received from their attorney in settlement of a potential claim against him. Because we reverse and remand for rescission, the trial court is obligated to reconsider the other components of its equitable remedy. Therefore, the parties are free to argue on remand for any other remedies consistent with rescission.

*Reversed and remanded.*