10-2376-cv
Post v. Killington, Ltd.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 1st day of June, two thousand eleven.

PRESENT: REENA RAGGI,
 RAYMOND J. LOHIER, JR.,
 *Circuit Judges*,
 JOHN G. KOELTL,
 *District Judge*.[*]

-----------------------------------------------------------------------
MARTIN POST, JILL POST, JUDITH A. DARK,
WILLIAM LANGLAIS, on behalf of themselves and
others similarly situated,

<em>Plaintiffs-Appellants</em>,

v.  No. 10-2376-cv

KILLINGTON, LTD., AMERICAN SKIING COMPANY,
SP LAND COMPANY, LLC, SP II RESORT, LLC,
KILLINGTON/PICO SKI RESORT PARTNERS, LLC,
S-K-I, LTD.,

<em>Defendants-Appellees</em>.

-----------------------------------------------------------------------

[*] District Judge John G. Koeltl, United States District Court for the Southern District of New York, sitting by designation.

APPEARING FOR APPELLANTS:      MITCHELL L. PEARL (Erin Miller Heins, Peter F. Langrock, William B. Miller, Jr., *on the brief*), Langrock Sperry & Wool, LLP, Middlebury, Vermont.

APPEARING FOR APPELLEES:      KAREN McANDREW (Angela R. Clark, *on the brief*), Dinse, Knapp & McAndrew, P.C., Burlington, Vermont, *for Defendant-Appellee Killington/Pico Ski Resort Partners, LLC*.

     GARY F. KARNEDY (Alexandra H. Clauss, *on the brief*), Primmer Piper Eggleston & Cramer P.C., Burlington, Vermont, *for Defendants-Appellees American Skiing Company, S-K-I Ltd., and Killington, Ltd.*

     ALAN S. LOEWINSOHN (Carol E. Farquhar, *on the brief*), Loewinsohn Flegle Deary, L.L.P., Dallas, Texas, *for Defendants-Appellees SP Land Company, LLC, and SP II Resort, LLC*.

Appeal from a judgment of the United States District Court for the District of Vermont (Christina Reiss, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the May 18, 2010 judgment of the district court is AFFIRMED.

Plaintiffs Martin Post, Jill Post, Judith A. Dark, and William Langlais, on behalf of themselves and other holders of "investor" ski passes ("investor passes") to the Killington Resort and Pico Mountain Ski Area ("the Resort"), appeal from an award of summary judgment dismissing claims under Vermont law for (1) breach of contract against defendants SP II Resort, LLC ("SP Resort"), SP Land Company, LLC ("SP Land"), and Killington/Pico Ski Resort Partners, LLC ("KSRP"), the current owners/operators of the Resort (collectively,

2

"current owners"); and (2) breach of an implied covenant of good faith and fair dealing against defendants Killington, Ltd. ("Killington"), American Skiing Company ("ASC"), and S-K-I, Ltd., the former owners/operators of the Resort (collectively, "former owners"). See Post v. Killington, Ltd., No. 5:02-CV-252, 2010 WL 3323659, at *17 (D. Vt. May 17, 2010).[1] We review an award of summary judgment de novo, "resolving all ambiguities and drawing all permissible factual inferences in favor of the party against whom summary judgment is sought." Burg v. Gosselin, 591 F.3d 95, 97 (2d Cir. 2010) (internal quotation marks omitted). We will uphold such an award only if the record reveals no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). In applying these standards, we assume the parties' familiarity with the facts and procedural history of the case.[2]

---

[1] Plaintiffs do not appeal the dismissal of their claim against defendant SP Land for breach of an implied covenant of good faith and fair dealing based on plaintiffs' failure to identify their contractual relationship with that defendant as required by Vermont law. See, e.g., Harsch Props., Inc. v. Nicholas, 2007 VT 70, ¶ 14, 182 Vt. 196, 202, 932 A.2d 1045, 1050 (2007). Accordingly, we do not discuss that claim further.

[2] Insofar as plaintiffs challenge the district court's decision to strike certain materials from the summary judgment record pursuant to Local Rule 56(b), we identify no abuse of the district court's considerable discretion in construing and applying its own local rules. See LoSacco v. City of Middletown, 71 F.3d 88, 92 (2d Cir. 1995). In any event, on our own de novo review, we have considered the stricken materials, which plaintiffs included in the record on appeal, and nevertheless conclude that summary judgment was warranted.

1.      Breach of Contract

Plaintiffs' contract claim derives from that provision in the investor passes granting them "free use of all ski lifts operated by Killington, Ltd. at Killington Ski Area so long as the corporation shall operate in the area under an agreement with the State of Vermont."[3] Post v. Killington, Ltd., 2010 WL 3323659 at *6 (quoting pass). Plaintiffs submit that the district court erred in concluding that the passes expired under their plain terms in 2007 when Killington ceased to operate the Resort after its sale to the current owners. See id. at *6-7. They further challenge the district court's determination that, as a matter of law, the current owners are not subject to successor liability. These arguments are without merit.

a.      Expiration of the Passes

Plaintiffs contend that the passes are ambiguous as to their application to possible future owners of the Resort, thereby precluding an award of summary judgment. We identify no such ambiguity in the plain language of the contract. See In re Grievance of Verderber, 173 Vt. 612, 615, 795 A.2d 1157, 1161 (2002) ("[W]hen the language of the contract is clear on its face, we will assume that the intent of the parties is embedded in its terms."). The use of the definite article in the phrase referencing the term of obligation – "so long as the corporation shall operate in that area under an agreement with the State of Vermont" – clearly references the only corporation previously identified: Killington. See, e.g., National Foods,

---

[3] The original passes indicated that the ski lifts were operated by Sherburne Corporation. Sherburne Corporation changed its name to Killington, Ltd. in 1985 without any change in the corporate structure. References in the text to Killington include Sherburne Corporation.

4

Inc. v. Rubin, 936 F.2d 656, 660 (2d Cir. 1991) (interpreting statutory reference to "the court" as narrowed by earlier reference to "court of competent jurisdiction"); cf. United States v. Rybicki, 354 F.3d 124, 137-38 (2d Cir. 2003) (en banc) (concluding criminal statute's reference to "the intangible right of honest services" referred to specific body of doctrine developed before statute's enactment). In this context, the phrase "the corporation" cannot reasonably be construed to mean "a corporation" so as to include unidentified future owners of the Resort within the stated obligation. See, e.g., In re West, 165 Vt. 445, 450, 685 A.2d 1099, 1103 (1996) ("We assume the parties included contract provisions for a reason, and we will not embrace a construction of a contract that would render a provision meaningless."); cf. Trustees of Net Realty Holding Trust v. AVCO Fin. Servs. of Barre, Inc., 144 Vt. 243, 248, 476 A.2d 530, 533 (1984) (identifying ambiguity only where reasonable people could differ as to contract's interpretation). Nor can plaintiffs create ambiguity by reference to extrinsic evidence – i.e., statements that Killington employees thought investment passes would be valid indefinitely – where the language of the passes clearly conditions their continued validity on operation of the resort by Killington. See, e.g., Paradise Rest., Inc. v. Somerset Enters., Inc., 164 Vt. 405, 409, 671 A.2d 1258, 1261 (1995).[4]

---

[4] To the extent plaintiffs' opening brief suggests that the contract was modified by the parties' conduct, the apparent waiver of that argument below precludes our consideration of it now. See Maska U.S., Inc. v. Kansa Gen. Ins. Co., 198 F.3d 74, 80 (2d Cir. 1999) (declining to review argument in view of appellant's disclaimer of reliance on argument in district court). In any event, plaintiffs' reply brief clarifies that they do not advance such an argument, but rather argue simply that the parties' conduct should inform our interpretation of the agreement, an argument that we reject in the text.

In sum, like the district court, we construe the plain language of the passes to grant plaintiffs free lift use only so long as Killington operated the Resort. Because that operation ceased in 2007 after sale of the Resort, the investor passes necessarily expired at the same time, precluding plaintiffs' breach of contract claim.

b.      Successor Liability

In an effort to avoid this conclusion, plaintiffs contend that questions of fact exist as to whether the current owners represent a "mere continuation" of Killington's operations so as to fall within a Vermont-recognized exception to the general rule against successor liability in a corporate sale of assets. See, e.g., Gladstone v. Stuart Cinemas, Inc., 2005 VT 44, ¶ 14, 178 Vt. 104, 111, 878 A.2d 214, 220 (2005); Ostrowski v. Hydra-Tool Corp., 144 Vt. 305, 307, 479 A.2d 126, 127 (1984). To determine whether that exception applies, Vermont courts consider whether (1) there is continuity of ownership and management between the purchasing and selling corporations, (2) only the successor corporation has survived, (3) adequate consideration supported the sale, and (4) the successor operates the same business as the seller. See Gladstone v. Stuart Cinemas, Inc., 2005 VT 44, ¶¶ 20-26, 178 Vt. at 114-17, 878 A.2d at 222-24. Plaintiffs insist that unresolved fact questions persist regarding the first two factors. We disagree, largely for the reasons stated by the district court.

As the district court correctly observed, no record evidence demonstrates continuing ownership between the former and current owners of the Resort. To the extent plaintiffs rely on the prior ownership interest Killington held in SP Land, it is undisputed that Killington

6

sold that interest to SP Land as part of the 2007 transaction.[5]

Nor is there record evidence of continuity of management. Although plaintiffs point to the current owners' retention of Killington's "senior management team," these persons were retained as employees of non-owner KSRP to operate the Resort. Plaintiffs identify no director, officer, employee, or shareholder of any purchaser who was also a director, officer, employee, or shareholder of any seller.

Likewise, no record evidence shows that the former owners dissolved as a result of the 2007 sale, leaving the current owners as the sole survivors. See id. ¶ 21, 178 Vt. at 115, 878 A.2d at 223 ("The second most important factor for applying the mere continuation exception is whether only the successor corporation has survived."). The merger of two former owners, S-K-I, Ltd. and Killington, shortly after the 2007 sale, resulting in Killington's dissolution, does not alter this conclusion because S-K-I, Ltd. undisputedly continued to operate after the merger. Also, former owner ASC retained substantial assets after selling the Resort in 2007. That it soon sold these assets and then dissolved only emphasizes its survival as a corporate entity distinct from the current owners of the Resort.

In the absence of evidence supporting a favorable finding for plaintiffs on the two most

---

[5] Plaintiffs' complaint that the district court afforded the ownership factor undue weight is irrelevant given our de novo review. In any event, the argument fails as a matter of both law and substance: Vermont recognizes continuity of ownership as "the single most important factor" in successor liability analysis, Gladstone v. Stuart Cinemas, Inc., 2005 VT 44, ¶ 20, 178 Vt. at 114, 878 A.2d at 222, and the record shows that the district court in fact considered each Gladstone factor in reaching its decision, see Post v. Killington, Ltd., 2010 WL 3323659, at *9-13.

7

important factors relevant to successor liability, other facts cited by plaintiffs are insufficient to defeat summary judgment on this question. See id. ¶ 25, 178 Vt. at 116, 878 A.2d at 224 (considering additional indicia where other factors already supported imposition of successor liability). For example, the current owners' maintenance of several aspects of the Resort's business cannot support a finding of mere continuation with the former owners where, as here, undisputed facts indicate distinct and independent entities. See id. ¶ 24, 178 Vt. at 115-16, 878 A.2d at 223 (noting diminished significance of continuity of business operations in establishing successor liability). Nor is there a basis to infer that a party to a complex transaction who contracts to assume only certain predecessor obligations thereby assumed every predecessor obligation. Plaintiffs' reliance on Gladstone for such a proposition is misplaced because that case did not involve a specific contractual agreement to assume certain predecessor obligations but not others. Cf. id. ¶ 24, 178 Vt. at 115-16, 878 A.2d at 223-24.

In sum, like the district court, we conclude that plaintiffs' failure to adduce sufficient evidence to allow a reasonable juror to impose successor liability on the current owners compels an award of summary judgment in their favor on the contract claim.

2.      Breach of the Implied Covenant of Good Faith and Fair Dealing

The district court concluded that plaintiffs' claims for breach of an implied covenant of good faith and fair dealing failed as a matter of law (1) against ASC and S-K-I, Ltd. because the investor passes did not create a contractual relationship between those former owners and plaintiffs, which it viewed as a necessary predicate for an implied covenant claim,

8

see Post v. Killington, Ltd., 2010 WL 3323659 at *15; see also Logan v. Bennington Coll. Corp., 72 F.3d 1017, 1025 (2d Cir. 1995) (observing that Vermont recognizes implied covenant of good faith and fair dealing in every contract); and (2) against Killington because no evidence indicated that this former owner acted outside its rights under the plain terms of the investor passes, see Post v. Killington, Ltd., 2010 WL 3323659 at *17; see also Southface Condo. Owners Ass'n Inc. v. Southface Condo. Ass'n, Inc., 169 Vt. 243, 248, 733 A.2d 55, 58-59 (1999) (overturning jury verdict of liability for breach of implied covenant where no evidence indicated "defendants took action contrary to their agreement with" plaintiffs).

We need not address the first ruling because, even assuming that plaintiffs could pursue ASC and S-K-I, Ltd. for collaborating with Killington in the breach of an implied covenant derived from the investor passes, the claim fails for the reason stated in the second ruling, i.e., no evidence indicates that Killington acted outside its contractual rights. As we earlier explained, once Killington stopped operating the Resort following the 2007 sale, its contractual obligations under the investor passes expired.

Plaintiffs submit that the parties' course of conduct nevertheless created an additional "obligation" for the former owners "to at least disclose [p]laintiffs' passes to potential buyers." Appellants' Br. at 50. We need not decide the merits of that legal claim because plaintiffs acknowledge that the former owners made such disclosure a few weeks before sale. In any event, where, as here, the language of the passes plainly alerted holders that the obligation to provide free use of ski lifts would continue only for so long as Killington

operated the Resort, plaintiffs cannot claim a "justifiable expectation" that future owners would honor the investor passes, much less charge the former owners with bad faith in failing to extract such a promise as a condition of sale. See Southface Condo. Owners Ass'n, Inc. v. Southface Condo. Ass'n, Inc., 169 Vt. at 246, 733 A.2d at 58 (observing that implied covenant requires only that "parties act with faithfulness to an agreed common purpose and consistency with the justified expectations of the other party" (internal quotation marks omitted)).

Accordingly, we conclude that claims against the former owners for breach of an implied covenant of good faith and fair dealing were properly dismissed.

3.     Conclusion

We have considered plaintiffs' remaining arguments on appeal and conclude that they are without merit. Accordingly, the judgment of the district court is AFFIRMED.

                              FOR THE COURT:
                              CATHERINE O'HAGAN WOLFE, Clerk of Court

10