2004 VT 22

# Anne M. Will v. Mill Condominium Owners' Association, Martin Nitka, Esq., Allen and Linda Seiple, Janice Graham and Cecilla McMillen

[848 A.2d 336]

No. 03-075

Present: Amestoy, C.J., Dooley, Johnson and Skoglund, JJ., and Állen, C.J. (Ret.), Specially Assigned

Opinion Filed March 12, 2004

*Stephen S. Ankuda* of *Parker & Ankuda, P.C.*, Springfield, for Plaintiff-Appellant.

*Jennifer G. Mihalich* of *Lynn & Associates, P.C.*, Burlington, for Defendants-Appellees Mill Condominium Owners' Association, Graham and McMillen.

*Robert Reis* and *Matthew D. Anderson* of *Webber, Reis, Holler & Urso, LLP*, Rutland, for Defendant-Appellee Nitka.

*T. Darrah Moore* of *Birmingham & Moore, P.C.*, Ludlow, for Defendants-Appellees Seiple.

¶ 1. **Amestoy, C.J.** Plaintiff Anne M. Will appeals from the trial court's order confirming the nonjudicial foreclosure sale of her condominium for failure to pay dues, and the summary judgment dismissal of her amended complaint for declaratory relief against defendants Mill Condominium Owners' Association, Martin Nitka, Esq., Allen and Linda Seiple, Janice Graham and Cecilla McMillen. Appellant argues that: (1) the application of the nonjudicial foreclosure sale statute to unpaid condominium dues violates the Vermont Constitution; (2) the sale was void under the contract doctrine of mutual mistake; (3) the condominium association and its agent, Martin Nitka, breached their duties by selling her property at below-market value; and (4) deviation from the nonjudicial foreclosure statute should void the sale and deed.[1] Because the foreclosure sale was not conducted in a reasonable manner, we vacate summary judgment and remand to the trial court for entry of judgment voiding the foreclosure sale of appellant's condominium unit.

¶ 2. Appellant owned a residential condominium unit at The Mill Condominiums in Ludlow, Vermont. After appellant failed to pay her condominium dues over a period of time, the officers of the Mill Condominium Owners' Association instructed attorney Martin Nitka to foreclose on the property. Attorney Nitka thereafter commenced a nonjudicial foreclosure pursuant to 27A V.S.A. § 3-116. Appellant had notice of the foreclosure sale and discussed the matter with attorney Nitka. She informed him that she would wire him the unpaid dues and asked him to postpone the sale scheduled for July 12, 2001, to a later time. Appellant's recollection of the discussion was that the sale would not take place if she wired the money to attorney Nitka's account by the close of the business day, July 16. According to attorney Nitka, he agreed to delay the sale only until July 13, but after the telephone conversation with appellant realized that he had other commitments, and moved the sale to July 16, 2001. At 10:00 a.m. on July 16, 2001, attorney Nitka proceeded with the auction of appellant's condominium. Appellant's wire transfer of funds sufficient to cover the dues, fees, and

---

[1] Appellant also argues that, as a matter of law, the foreclosure deed conveyed only a one-half interest in appellant's property. Because the sale is void, we do not reach this issue.

costs owed arrived at 11:00 a.m. By that time, the property had been sold to defendants Allen and Linda Seiple for $3510.10, the amount necessary to pay the delinquent dues, attorney's fees, and the costs of foreclosure. The trial court found that, at the time of the sale, attorney Nitka and the Seiples apparently believed that the unit was subject to a mortgage of $45,000. It was later determined that the mortgage had been earlier discharged. The trial court found that the fair market value of the condominium at the time of sale was approximately $70,000. Attorney Nitka delivered the deed to the Seiples on August 31, 2001.

¶ 3. In October 2001, appellant filed a complaint seeking a declaratory judgment setting aside the nonjudicial foreclosure. In December 2001, after trial, the court entered judgment for defendants on the record. The court granted appellant thirty days to amend her complaint to include a damages claim. Appellant filed an amended complaint, and defendants Nitka and the Seiples filed motions for summary judgment. While these motions were pending, the court issued an entry order confirming the foreclosure sale, and conveying the entire interest in the property to the Seiples. The court then granted summary judgment for defendants Nitka and the Seiples on July 5, 2002, after concluding that appellant could not maintain any cause of action against them. On January 17, 2003, the court granted summary judgment for the remaining defendants on the same basis. On the same date, the court granted appellant permission to appeal its order of confirmation. This appeal of the trial court's confirmation order and the court's summary judgment dismissal of appellant's amended complaint followed.

¶ 4. Appellant first argues that the application of the nonjudicial foreclosure sale statute to unpaid condominium dues violates the Vermont Constitution. However, appellant did not adequately raise this argument below so as to preserve it for appeal. We reject appellant's assertion that she preserved this issue for our review by mentioning it in a pretrial memorandum filed with the trial court. Appellant did not raise this argument in her initial complaint, her amended complaint, or in her memorandum in opposition to defendants' motion for summary judgment. Therefore, she has waived her right to raise this argument on appeal. See *Bull v. Pinkham Eng'g Assocs.*, 170 Vt. 450, 459, 752 A.2d 26, 33 (2000) ("Contentions not

raised or fairly presented to the trial court are not preserved for appeal.").

¶ 5. Appellant also argues that the foreclosure sale was void under the contract doctrine of mutual mistake. The doctrine of "mutual mistake" provides that "[w]here a contract has been entered into under a mutual mistake of the parties regarding a material fact affecting the subject matter thereof, it may be avoided ... at the instance of the injured party, and an action lies to recover money paid under it." *Rancourt v. Verba*, 165 Vt. 225, 228, 678 A.2d 886, 887 (1996) (internal quotation marks and citation omitted). Appellant maintains that attorney Nitka should be considered her agent, and that the mutual mistake here was the parties' belief that the property was subject to a $45,000 mortgage. As the trial court pointed out in rejecting this argument, however, this doctrine does not apply because appellant was not a party to the sales contract. Attorney Nitka was not appellant's agent; he represented the condominium association. We therefore reject appellant's argument that the contract is void under the doctrine of mutual mistake.

¶ 6. Appellant next claims that the condominium association and attorney Nitka breached their duties when they failed to maximize the sale price of the condominium. The trial court rejected this claim after concluding that there is no statutory requirement to conduct the sale in a commercially reasonable manner, and that neither the condominium association, nor Nitka, owed appellant a fiduciary duty. Nevertheless, appellant argues that 12 V.S.A. § 4532(g) imposes on the mortgagee an affirmative duty to conduct the nonjudicial sale in a commercially reasonable manner or in such a manner as to maximize the sales price of such property.[2]

¶ 7. We note at the outset that although appellant has predicated her argument on theories of "fiduciary duty" and "commercial reasonableness," it is unnecessary to decide in this case the extent to which either theory might be applicable to a mortgagee utilizing the nonjudicial foreclosure procedures of 12 V.S.A. § 4532(g). Appellees' resort to the nonjudicial foreclosure statute arises not as a result of a

---

[2] In relevant part, 12 V.S.A. § 4532(g) reads:

> At the sale, the premises shall be sold to the highest bidder in conformance with the terms of sale set forth in the foreclosure notice. The mortgagor is entitled to receive any surplus from the proceeds of the sale and the mortgagor shall be liable for any deficiency as determined by a subsequent action for a deficiency judgment.

mortgagor-mortgagee relationship — but rather because of the provisions of the Uniform Common Interest Ownership Act, 27A V.S.A. §§ 1-101 – 4-120 (UCIOA), which provides a statutory right to the Condominium Association to institute a nonjudicial foreclosure proceeding for nonpayment of condominium dues. Thus, the extent of the duty owed by the Condominium Association and its agent to the appellant is first established by discerning the obligations and rights of the parties under the Act.

¶ 8. The Association's commencement of a nonjudicial foreclosure was made pursuant to 27A V.S.A. § 3-116(i), which states, "The association's lien may be foreclosed pursuant to section 4531a of Title 12 in which case the association shall notify all the lienholders of the affected unit of its action."

¶ 9. The official comment to § 3-116 reveals the Legislature's intent to provide condominium associations with adequate mechanisms to collect unpaid dues while offering alternatives to the radical remedy of foreclosure. Thus, the comment notes that subsection (f) "makes clear that the association may have remedies short of foreclosure of its lien that can be used to collect unpaid assessments. The association, for example, might bring an action in debt or breach of contract against a recalcitrant unit owner rather than resorting to foreclosure." On the other hand, the Legislature reserves what it considers the more expeditious procedures for foreclosure on units belonging to a cooperative, since in these associations assessments are used to pay each unit's share of the common mortgage, and nonpayment may force the whole community into default. Thus, the statute allows for the treatment of units in cooperatives as personal property instead of realty, so that they can be foreclosed under the generally less expensive and faster procedure provided for under Article 9 of the Uniform Commercial Code (UCC). The comment points out that condominium communities are generally not burdened by a substantial underlying mortgage and therefore,

> failure to pay assessments on time will have less serious consequences for the association than in the case of cooperatives. The section provides that the association lien in a condominium or planned community is to be foreclosed according to the rules generally applicable to real estate mortgages ... rather than setting out a special faster method of foreclosure in the statute.

¶ 10. It is clear from these comments that the Legislature intended the application of foreclosure rules to afford more protection to the condominium unit owner than to the owner of a cooperative, presumably to minimize the chances that a condominium could be subject to foreclosure merely for nonpayment of dues, which ordinarily, even after nonpayment for months (or years), would still be an amount far less than the value of the real estate.

¶ 11. Although the rules "generally applicable to real estate mortgages" do not impose a commercial reasonableness standard on foreclosure sales, the UCIOA does provide for this additional layer of protection. Section 1-113 of the UCIOA states that "[e]very contract or duty governed by this title imposes an obligation of good faith on all parties in its performance or enforcement." The official comment explains:

> This section sets forth a basic principle running throughout this Act: in transactions involving common interest communities, good faith is required in the performance and enforcement of all agreements and duties. Good faith, as used in this Act, means observance of two standards: "honesty in fact," and observance of reasonable standards of fair dealing. While the term is not defined, the term is derived from and used in the same manner as in Section 1-201 of the Uniform Simplification of Land Transfers Act, and Sections 2-103(i)(b) and 7-404 of the Uniform Commercial Code.

¶ 12. The UCC and Uniform Simplification of Land Transfers Act sections alluded to in the official comment define and refer to the observance of "reasonable commercial standards of fair dealing in the trade." 9A V.S.A. § 2-103(1)(b) (UCC). Hence, the official comment to § 1-113 expresses in unequivocal terms the Legislature's intent to import the commercial reasonableness standard into the UCIOA.

¶ 13. While the intent of the Legislature to impose the commercial reasonableness standard on all common interest communities created after the effective date of the law is clear, the application of the standard to common interest communities created before the enactment of the statute is less certain. This is so because § 1-113 is not listed in § 1-204(a), which enumerates the sections and subdivisions that are applicable to common interest communities created before the enactment of the statute:

> Unless excepted under section 1-203 of this title, all common interest communities existing in this state on the effec-

tive date of this law are subject to the following sections or subdivisions of this title: 1-103, 1-105, 1-106, 1-107, 2-103, 2-104, 2-121, 3-102(a)(1) through (6) and (11) through (16), 3-111, 3-116, 3-118, 4-109 and 4-117 to the extent necessary to construe the applicable sections. Those sections apply only with respect to events and circumstances occurring after the effective date of this law and do not invalidate existing provisions of the declaration, bylaws, plats or plans of those common interest communities.

27A V.S.A. § 1-204(a)

¶ 14. The issue is relevant to the instant case because it appears that the Mill Condominium Association predated the January 1, 1999 effective date of the UCIOA. It would be irrational, however, to conclude that the commercial reasonableness standard needs not to be observed in a § 3-116 foreclosure because the condominium association predated the statute. The foreclosure action deals with appellant's unpaid assessments occurring after January 1, 1999, and neither appellant nor appellees contest the applicability of the UCIOA in part to preexisting common interest communities "with respect to events and circumstances occurring after the effective date of [the Act]." 27A V.S.A. § 1-204(a). Moreover, it is the applicability of UCIOA that has provided appellees with access to a foreclosure remedy they would not otherwise have. Cf. *Alpine Haven Prop. Owners Ass'n v. Deptula*, 2003 VT 51, ¶ 9, 175 Vt. 559, 830 A.2d 78 (mem.) (where none of events and circumstances of case occurred after effective date of Act, UCIOA did not apply).

¶ 15. It is conceivable that the Legislature omitted § 1-113 from the enumeration of sections applicable to pre-existing common interest communities because of concerns that applying the commercial reasonableness standard to previously acquired rights and obligations "would unduly alter the legitimate expectations of [pre-existing] unit owners and declarants." 27A V.S.A. § 1-201 (official comment). It is inconceivable, however, that the Legislature intended its omission to insulate pre-existing communities from their obligations under the UCIOA when they are availing themselves of a remedy provided by the very same act, because the parties could not expect that their obligations would be defined by any standard other than the one supplied by the statute. We presume that "the Legislature [did] not intend an interpretation that would lead to absurd or irrational

consequences." *Braun v. Bd. of Dental Exam'rs*, 167 Vt. 110, 117, 702 A.2d 124, 128 (1997). Therefore, we hold that the enforcement mechanisms provided for in § 3-116 must be conducted in good faith as defined in § 1-113, that is, in a commercially reasonable manner.

 ¶ 16. The "commercial reasonableness" standard is well defined in Vermont. A secured party's disposition of collateral is governed by Part 6 of Article 9 of Vermont's Uniform Commercial Code. Title 9A, § 9-610(b) imposes a positive duty on the secured party to act in a commercially reasonable manner in every aspect of the disposition of collateral. 9A V.S.A. § 9-610(b). See also *Chittenden Trust Co. v. Maryanski*, 138 Vt. 240, 244, 415 A.2d 206, 208 (1980) (interpreting previous statute governing disposition of collateral). This duty has been described as an obligation on the secured party "to utilize his best efforts to sell the collateral for the best price and to have a reasonable regard for the debtor's interest.'" *Id.* (quoting *First Nat'l Bank & Trust Co. v. Holston*, 559 P.2d 440, 444 (Okla. 1976)). Although a sale is not necessarily unreasonable because a better price could have been obtained, "the secured party must make a good faith effort to maximize the value of the collateral." *Id.* at 244, 415 A.2d at 209.

 ¶ 17. The commercial reasonableness of a sale must be determined on a case-by-case basis. *Fed. Fin. Co. v. Papadopoulos*, 168 Vt. 621, 623, 721 A.2d 501, 503 (1998) (mem.). The secured party bears the burden "to prove that the disposition of collateral was commercially reasonable." *Id.* In the case at hand, in order to support the summary judgment under this standard, the court would have to find that the Condominium Association and attorney Nitka had proved specific facts which, when "viewed in totality," constituted a commercially reasonable disposition of appellant's property. See *Maryanski*, 138 Vt. at 245, 415 A.2d at 209.

 ¶ 18. The evidence in the record, however, does not support summary judgment under this standard; rather, it supports a finding that, as a matter of law, the sale did not conform with the requirements of good faith and commercial reasonableness set forth by § 1-113 of the UCIOA. First, the disparity between the condominium's sale price and its fair market value, although not dispositive, must be taken into account in the assessment of the reasonableness of the sale. See *Papadopoulos*, 168 Vt. at 623, 721 A.2d at 503. In this case the discrepancy suggests that no efforts were made to attain the best price for the unit. The trial court found the fair market value of the condominium to be "approximately $70,000." Although the court observed

that attorney Nitka and the Seiples apparently thought that the property was subject to an undischarged $45,000 mortgage, the purchase price — even under such an assumption — was less than 15% of the value found by the trial court.

¶ 19. In addition, this Court has found that, in private sales, the seller's exclusive reliance on one bid may be a factor against a finding of reasonableness. *Id.* Although this was a public sale, it weighs against such a finding in this case as well, considering the alleged statement from Mr. Nitka to Mr. Seiple informing him that the minimum acceptable bid for this property would be $3510.50. Although there is no suggestion that this was done in bad faith, giving this information to the only bidder was certainly not a way to maximize the value of the collateral; rather, it was an assurance that the condominium would be sold for exactly that low amount.

*Summary judgment is vacated, and the case remanded to the trial court for entry of judgment voiding foreclosure sale of appellant's condominium unit.*