STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |
|---|---|
| In re: Entergy Nuclear/ Vermont Yankee | } |
| Thermal Discharge permit amendment | } Docket No. 89-4-06 Vtec |
| (Appeal of Connecticut River Watershed Council, | } |
| Trout Unlimited (Deerfield/Millers 349 Ch.), | } |
| and Citizens Awareness Network) | } |
| (Appeal of New England Coalition | } |
| on Nuclear Pollution) | } |
| (Cross-Appeal of Entergy Nuclear | } |
| Vermont Yankee, LLC) | } |
|  | } |

## Decision and Order on NECNP's Motion for Summary Disposition and Remand, and on Entergy's Motion for Interlocutory Appeal as to Applicability of Vermont Water Quality Standards

Appellants Connecticut River Watershed Council, Trout Unlimited (Deerfield/Millers 349 Chapter), Citizens Awareness Network (Massachusetts Chapter) and New England Coalition on Nuclear Pollution, and Cross-Appellant Entergy Nuclear Vermont Yankee, LLC, appealed from a decision of the Vermont Agency of Natural Resources, approving an amendment of a thermal discharge permit issued to Entergy Nuclear Vermont Yankee, LLC.

Appellants Connecticut River Watershed Council (CRWC), Trout Unlimited, and Citizens Awareness Network (CAN) (collectively: the CRWC Appellants) are represented by Patrick A. Parenteau, Esq., David K. Mears, Esq., and Justin E. Kolber, Esq.; Appellant New England Coalition on Nuclear Pollution (NECNP) is represented by Evan J. Mulholland, Esq.; Cross-Appellant-Applicant Entergy Nuclear Vermont Yankee, LLC (Entergy) is represented by Elise N. Zoli, Esq., Matthew S. Borick, Esq., Sarah Heaton Concannon, Esq., U. Gwyn Williams, Esq.; Haimavathi Marlier, Esq.; Robert A. Miller, Jr.,

1

Esq.; R. Bradford Fawley, Esq.; and Zachary R. Gates, Esq.; the Vermont Agency of Natural Resources is represented by Catherine Gjessing, Esq. and Warren T. Coleman, Esq.; and the Water Resources Panel of the Natural Resources Board is represented by John H. Hasen, Esq.

NECNP has moved for summary disposition and remand based on an argument that a specific section of the Vermont Water Quality Standards (VWQS): § 1-04.A.2, required the ANR to consider alternatives to the increase in thermal discharge. Entergy has moved for permission to take an interlocutory appeal of this Court's June 6, 2007 decision regarding the applicability of the Vermont Water Quality Standards in general.

Procedural History of Entergy's Current Discharge Permit and Amendment Application

In July of 2001, the ANR issued Discharge Permit No. 3-1199 (the 2001 Discharge Permit) to then-Vermont Yankee Nuclear Power Corporation, authorizing it to discharge condenser cooling water into the Connecticut River, subject to temperature-related restrictions applicable during two distinct periods each year: October 15 through May 15 and May 16 through October 14. The 2001 Discharge Permit was not appealed. In the mid-October through mid-May period, the 2001 Discharge Permit restricted the maximum temperature in the river, the rate of change of the river temperature, and the increase of the river temperature above ambient levels. In the mid-May through mid-October period, at issue in the present application, the 2001 Discharge Permit restricted the allowable increase of the river temperature above ambient levels to a five degree Fahrenheit increase when the river temperature was below 55°F, a four degree increase when the river temperature was between 55°F and 59°F, a three degree increase when the river temperature was between 59°F and 63°F, and a two degree increase when the river temperature was above 63°F. The 2001 Discharge Permit was subsequently amended several times without appeal;

2

those amendments did not alter the provisions applicable to the mid-May through mid-October period.

In February of 2003, Entergy applied for the permit amendment at issue in the present appeal: to increase the temperature of the Connecticut River above the ambient levels by an additional one degree Fahrenheit during the mid-May through mid-October period. The ANR granted Entergy's request for the increase during the period from June 16 through October 14 and denied it for the period from May 16 through June 15, restricting the allowable increase of the river temperature above ambient levels to a five degree Fahrenheit increase when the river temperature was below 59°F, a four degree increase when the river temperature was between 59°F and 63°F, a three degree increase when the river temperature was between 63°F and 78°F, and a two degree increase when the river temperature was above 78°F. In addition, the ANR required Entergy to reduce the thermal output of the discharge if it reaches 85°F to keep it below that level. Thus, the application that is the subject of the present appeal only relates to the thermal component of the facility's discharge to the river, and the proposed limits on the allowable temperature increase in the river caused by the facility.

Procedural History of VWQS Issue

In its decision of January 9, 2007, the Court set forth the statutory framework governing this appeal. In that decision, the Court ruled as follows on the issue of whether the proposed permit amendment meets the requirements of the Vermont Water Quality Standards through the state Water Pollution Control Act: "to the extent they are not less stringent than the requirements in the federal Clean Water Act, and do not otherwise conflict with the federal statute as applied to this proposed amendment, the Vermont Water Quality Standards do apply to the Court's consideration of the proposed amendment." The Court stated in that decision that it could not " determine in the abstract

3

whether any particular requirement of the Vermont Water Quality Standards is less or more stringent than the federal standards, or conflicts with the federal Clean Water Act; rather, that determination must be made as those standards are applied to the evidence regarding the proposal before the Court."

In its June 6, 2007 order on the motions to reconsider or clarify, the Court explicitly stated that, while it would not revisit the final and unappealed underlying 2001 Discharge Permit (in determining whether to grant this amendment to that permit):

the Court must consider any relevant provisions of the VWQS as they relate to the evidence presented on the effect of a one degree increase in thermal discharge. It is this Court's statutory obligation, under the de novo standard of review governing this appeal, to apply the "substantive standards that were applicable before the tribunal appealed from." 10 V.S.A. § 8504(h). If the ANR were required to consider whether the proposed thermal discharge amendment would violate any relevant standard established by either the Vermont Water Pollution Control Act, 10 V.S.A. § 1250 et seq., or the VWQS, the Court must consider the evidence in relation to the same standards. This is not a ruling as to which particular standards may be applicable, it is merely a ruling that, in this de novo proceeding, this Court must apply whatever standards were applicable before the ANR.

The June 6, 2007 decision also ruled on Entergy's motion to clarify or alter the Court's January 9 Decision and Order regarding the applicability of the VWQS:

The plain language of the federal statute, quoted in full in this Court's January 9 Decision and Order, states that nothing in the federal act shall "preclude or deny the right of any State" to adopt or enforce "any requirement respecting control or abatement of pollution," unless the State requirement is "less stringent" than the federal limitation, in which case, the more stringent federal requirements apply. 33 U.S.C. § 1370. Thus, as the January 9 Decision and Order determined, to the extent the VWQS are relevant and are not less stringent than the provisions of the federal Clean Water Act, they apply to this appeal and are not preempted by federal law.

(Citation omitted). In a footnote, the Court also pointed out that, "[t]o the extent that Entergy seeks the Court's opinion in advance of trial as to whether all of the VWQS are

4

more stringent or less stringent than the federal Clean Water Act, it seeks an impermissible advisory opinion; this Court can only properly make such a determination as those standards may be applied to the facts of this particular application, if at all."

The June 6, 2007 decision also went on to analyze the effect of §316(a) of the federal Clean Water Act, 33 U.S.C. § 1326(a), under which the present amendment is generally sought, and stated that:

> Section 316(a) authorizes the Secretary of the Interior, or a state agency if it has been granted the authority to operate its permitting program as an NPDES program within the state, to impose an alternate effluent limitation on a facility when the operator can demonstrate to the satisfaction of the decisionmaker that the otherwise-applicable effluent limitations are "more stringent than necessary" to assure the protection of shellfish, fish, and wildlife. 33 U.S.C. § 1326(a). If it is the VWQS that are the otherwise-applicable substantive thermal effluent standards, the fact that this application seeks a §316(a) variance from them does not render them inapplicable.

Thus, as of the June 6, 2007 decision, the Court did not rule that any particular sections of the VWQS were or were not applicable to the amendment application before the Court in this appeal. Until the pending motion requesting a remand was filed, none of the parties had sought a ruling from the Court as to whether any specific provision of the VWQS was applicable to this appeal.

NECNP's Motion for Summary Disposition and Remand

NECNP has moved for summary disposition that a specific section of the VWQS: § 1-04.A.2, required the ANR to consider alternatives to the increase in thermal discharge at issue in the amendment application, and has moved to remand the application to the ANR for it to perform that analysis in the first instance. VWQS § 1-04 A.2 prohibits "new"

discharges[1] from being approved unless "there is neither an alternative method of waste disposal, nor an alternative location for waste disposal, that would have a lesser impact on water quality including the quality of groundwater, or if there is such an alternative method or location, it would be clearly unreasonable to require its use."

To determine whether § 1-04 A.2 applies to an application such as the present one for a so-called thermal variance or alternative effluent limitation, the Court must analyze the interrelated federal and state statutory and regulatory framework as a whole. Section 316(a) of the federal Clean Water Act (CWA) authorizes the State to impose an alternative effluent limitation with respect to the "thermal component" of a facility's discharge that is less stringent than otherwise required, if the facility can demonstrate that such less-stringent standard will nevertheless "assure the protection and propagation of a balanced, indigenous population[2] of shellfish, fish, and wildlife, in and on the body of water." 33 U.S.C. § 1326(a). Section 303(g) of the CWA, 33 U.S.C. §1313(g), and 40 C.F.R. §131.12 distinguish between thermal and other discharges, and require that a state's water quality standards relating to heat or thermal discharges be consistent with §316.

Vermont has enacted its own water quality standards governing thermal discharge, found in VWQS § 3-01. Under the Vermont regulatory framework, the ANR, and hence this Court in this de novo appeal, may approve an alternate thermal effluent limitation, that is, one that is less stringent than the thermal criteria otherwise set forth in the VWQS, if three requirements are met. VWQS § 3-01 B.1.d. First, the facility must show that the

---

[1] "New discharge" is defined as "any discharge not authorized under the provisions of 10 V.S.A. § 1263 as of January 7, 1985 or any increased pollutant loading or demand on the assimilative capacity of the receiving waters from an existing discharge that requires the issuance of a new or amended permit." VWQS § 1-01 B.31.

[2] The phrase "balanced indigenous population" may be abbreviated or referred to as "BIP."

6

discharge "will comply with all other applicable provisions of these rules;" second, the facility must show that a 200-foot mixing zone length is "not adequate to provide for assimilation of thermal waste;" third, the facility must show that, after taking into account "thermal effects and other wastes," the alternative limitation "will not result in thermal shock or prevent the full support of uses of the receiving waters." Id.

We must read VWQS § 3-01 B.1.d and VWQS § 1-04 A.2 to harmonize them, if possible, in light of the federal as well as the state statutory requirements, so that they are consistent with each other and with § 316 of the CWA. NECNP argues that a facility could be subjected to the additional requirement of the alternatives analysis required by VWQS § 1-04 A.2 without creating an inconsistency with the provisions of VWQS § 3-01 B.1.d and CWA 316(a) that a less stringent standard may be allowed as long as the protection and propagation of the balanced indigenous population is assured.

However, that interpretation does not make sense in the context of the federal and state statutory schemes that allow an exception (only for thermal discharge) from the otherwise-required standards if the required showing of protection of the balanced indigenous population is successfully made. That is, requiring the alternatives analysis to be conducted would result at most in a determination of what standards would be required if the discharge did not qualify for the exception. Requiring an analysis of achievable alternatives, only to determine whether they can be waived, would be an unnecessary exercise. We must interpret the regulations, in light of the statutory provisions,[3] to avoid an absurd result. Will v. Mill Condominium Owners' Assn., 2004 VT 22, ¶15, 176 Vt. 380, 387-88. Rather, the subject of this proceeding is to allow the facility to present evidence in

---

[3] The statutory provisions that provide the balanced indigenous population 'performance standard' exception only for the thermal component of a discharge, but not for other pollutants, represents a legislative policy choice to be implemented through the regulations.

7

support of its application that it does qualify for the exception.

More importantly, by its terms, the more general provision of VWQS § 1-04 A.2 requires all new discharges to undergo an alternatives analysis, while the more specific VWQS § 3-01 B.1.d provides that thermal discharge requirements may be waived if certain conditions are met, one of which is compliance with "all other applicable provisions" of the VWQS. One resolution of this apparent conflict is simply the determination that VWQS § 1-04 A.2 is not an "applicable provision" in this context. Another is that, when presented with this type of conflict between regulatory provisions, the "more specific provision controls over the more general one." See Judicial Watch, Inc. v. State, 2005 VT 108, ¶8, 179 Vt. 214, 217 (interpreting conflicting statutory provisions). While VWQS § 1-04.A.2 is applicable to discharges in general, the exception provided in VWQS § 3-01 B.1.d more specifically regulates only thermal discharge. It is therefore a "more precise" control over exactly the type of discharge at issue in this application. Id. at 218.

We must conclude that, within the VWQS, § 3-01 B.1.d, and not § 1-04 A.2, governs the application at issue in this appeal.[4] Accordingly, NECNP's motion for summary disposition is DENIED, and its motion to remand is therefore DENIED as moot.

Entergy's Motion for Interlocutory Appeal as to Applicability of VWQS

V.R.A.P. 5(b)(1) provides for an interlocutory appeal of an order or ruling that "involves a controlling question of law as to which there is substantial ground for difference of opinion" and if "an immediate appeal may materially advance the termination

[4] No issues other than the requested thermal variance are or can be before the Court in the present appeal, as that was all that was applied for to the ANR. The Court specifically makes no ruling relating to the renewal permit proceedings now pending before the ANR.

of the litigation."

Applying the factors set forth in V.R.A.P. 5(b)(1), the Court's June 6, 2007 ruling as to the Vermont Water Quality Standards involves a controlling question of law: that to the extent the VWQS are relevant and are not less stringent than the provisions of the federal Clean Water Act, they apply to this appeal and are not preempted by federal law, but that the determination of whether any particular section of the VWQS applies to this amendment application cannot be made in the abstract. It is not clear to this Court whether there is substantial ground for difference of opinion as to this question, although there may be substantial ground for difference of opinion, as seen in the motion for summary disposition discussed above, as to whether any specific section[5] of the VWQS is applicable to this particular amendment application.

However, it does not appear to the Court that an immediate appeal may materially advance the termination of the litigation. Rather, it will be more efficient for the trial court in the first instance to determine which, if any, of the VWQS are applicable, and for the Supreme Court to consider any appeal of such a ruling in conjunction with any appeal of the decision on the merits of the amendment application.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Entergy's Motion for Permission to take an Interlocutory Appeal of the Court's June 6, 2007 ruling regarding the Vermont Water Quality Standards is DENIED.

---

[5] The parties do not dispute, for example, that the thermal requirements in VWQS §3-01 are applicable to this particular amendment application. On the other hand, Entergy has stated its position that §§1-04.A.2 and 1-03.C.2 are not applicable. The argument as to §1-04.A.2 was made and resolved in Entergy's favor in the context of NECNP's motion for summary disposition and remand analyzed above; the argument as to §1-03.C.2 has not been presented to the Court. In any event, neither specific section is the subject of Entergy's motion for interlocutory appeal.

As noted in the decision on the other interlocutory appeal motions issued today, V.R.A.P. 5(b)(1) allows the moving party, if the motion is denied, to apply (within ten days of the denial) to the Supreme Court for permission to take the interlocutory appeal, and allows five days after service of the motion for any responses; the Court expects the parties to proceed with the evidentiary hearing as scheduled, pending any ruling on any such motion.

Done at Berlin, Vermont, this 19th day of June, 2007.

_____
Merideth Wright
Environmental Judge