NOT DESIGNATED FOR PUBLICATION

No. 114,040
No. 114,684

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JIM HILDENBRAND and JAMES B. HILDENBRAND,
Trustee of the JAMES B. HILDENBRAND LIVING TRUST,
Dated March 1, 2012,
*Appellants*,

v.

AVIGNON VILLA HOMES COMMUNITY ASSOCIATION, INC.,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; GERALD T. ELLIOTT, judge. Opinion filed October 28, 2016. Reversed and remanded with directions.

*Eldon J. Shields* and *Steven R. Smith*, of Gates Shields Ferguson Hammond, P.A., of Overland Park, for appellants.

*Lawrence L. Ferree, III*, and *Brett T. Runyon*, of Ferree, Bunn, Rundberg & Ridgway, Chartered, of Overland Park , for appellee.

Before MALONE, C.J., HILL and ATCHESON, JJ.

*Per Curiam*:  A long-simmering dispute between James Hildenbrand and the homes association for the Olathe community in which he lives has boiled over in the Johnson County District Court as a fight about extensive landscaping he had done to his house. Part way through the legal proceedings, the district court directed that a homes association committee review the landscaping plan—something that hadn't happened

1

even though Hildenbrand already completed the improvements. The committee rejected the plan, and the district court upheld that determination, finding the decision to have been made in good faith. The district court later ordered Hildenbrand to remove the landscaping. On Hildenbrand's appeal, we reverse and remand for further proceedings because the district court applied an incomplete and legally insufficient standard in upholding the committee's decision.

## FACTUAL AND PROCEDURAL BACKGROUND

Given the comparatively narrow basis for our decision, we need not lay out a detailed account of the friction between Hildenbrand and the Avignon Villa Homes Community Association and, in particular, the Association's Architectural Review Committee. An extended recounting of the litigation is likewise unnecessary. We offer a highly condensed version of the factual and procedural history for context, recognizing that the parties are fully familiar with the particulars.

In 2012, Hildenbrand moved into Avignon Villa Homes, a residential development catering to adults with grown children. The homes are, by design, quite similar in appearance. The Homes Association arranges for mowing, snow removal, and other maintenance services for the community residents. The homeowners pay fees to the Homes Association and agree to abide by the extensive covenants, rules, and regulations governing land use in the development. Hildenbrand was informed of and received a copy of those materials during the purchase process.

To promote the common appearance of the community, the Homes Association has developed several model landscape plans. The association's covenants require a homeowner to submit any contemplated landscaping to the Architectural Review Committee for advance approval. The committee consists of development homeowners elected by their peers.

2

Shortly after Hildenbrand moved in, he and the Homes Association were at odds over some flower pots he put around his residence, his apparently continuing failure to park a car in his garage, and the placement of a satellite dish in his backyard. While Hildenbrand and the association were warring over the satellite dish, he submitted a plan for landscaping of his backyard that was considerably more elaborate than the suggested approaches. The association refused to consider his plan, since the dispute over the satellite dish had not been resolved. The association assessed daily "fines" against Hildenbrand because he refused to move the satellite dish to an approved location on his property.

In response to a request from Hildenbrand, the Federal Communications Commission issued an opinion letter to the effect that the Homes Association could not dictate where the satellite dish should be placed. The association withdrew its demand the dish be moved and rescinded the fines.

In the meantime, Hildenbrand had been working with a professional landscaper to design plans for both his backyard and front yard. In late 2012, Hildenbrand submitted that landscape plan for his backyard to the association. The Architectural Review Committee approved parts of the plan and rejected other components. The next spring, Hildenbrand e-mailed a revised backyard plan and says he had a front yard plan hand delivered to the association's management office. During the court proceedings, the Homes Association suggested Hildenbrand didn't provide a front yard plan. The parties do agree the front yard plan never went to the Architectural Review Committee for consideration.

In late April 2013, Hildenbrand spoke with the Homes Association property manager about his landscaping plans. She apparently looked at a file and seeing the review of the backyard plan from the preceding fall told Hildenbrand something to the

effect that the landscaping had been approved. Taking that representation as a categorical go-ahead, Hildenbrand had the landscaper begin the extensive changes to his front and backyards. In June, the Homes Association and its lawyer sent letters to Hildenbrand telling him to stop the landscaping because his plan had not been approved. Although not directly relevant to the point we decide, we mention conflicting trial evidence some of which suggests the landscaping had largely been completed by then and some of which suggests the most sweeping aspects of the plan remained to be done. The undisputed trial evidence established Hildenbrand completed the landscaping and paid about $17,000 for the project.

Rather than responding directly to the Homes Association or its lawyer about the demand he halt the landscaping, Hildenbrand hired his own lawyer and filed a Chapter 61 limited action in the district court alleging the association's position violated his legal rights. The Homes Association counterclaimed for an order requiring removal of the landscaping—characterized as specific performance of the association's covenants—and for a money judgment reflecting both fines it had levied against Hildenbrand for the unapproved landscaping and its legal fees. Given the issues and the relief each side sought, the district court removed the case from the limited actions docket and treated it as a regular Chapter 60 civil suit, substantially expanding the discovery options and pretrial motions routinely available to litigants.

Hildenbrand and the Homes Association tried the case to the district court sitting without a jury in early 2014. Broadly characterizing the evidence, the Homes Association did not contend the landscaping was aesthetically objectionable in any abstract sense or offer specific evidence it would materially diminish property values within the community. Rather, the association argued that Hildenbrand patently violated the covenants, rules, and regulations to which he agreed by making substantial changes to his property without advance approval and that the landscaping was far and away the most elaborate and ostentatious in the community. The association suggested both current

4

owners and potential buyers might be put off by widely varying landscaping of the homes or especially elaborate landscaping of a few homes, thus undercutting a fundamental goal of presenting a common appearance throughout the development. Hildenbrand presented evidence, albeit questioned by the Homes Association, that removing the landscaping and restoring his property would cost about $40,000. The district court ruled against Hildenbrand on his claims against the Homes Association and entered an order that the landscaping be removed. In its ruling, the district court noted that Hildenbrand's overall landscaping plan had never been submitted to or considered by the Architectural Review Committee. So the district court stayed its order and directed that the Architectural Review Committee render a decision on the landscaping plan. The district court also gave Hildenbrand the option to challenge the committee's decision if he believed it were improperly made.

Hildenbrand promptly submitted his full landscaping plan to the Architectural Review Committee, and the committee, a week later, rejected the bulk of the plan and, thus, the actual work that had been done. Exercising his prerogative under the district court's order, Hildenbrand disputed the decision.

The district court heard testimony and received other evidence regarding the Architectural Review Committee's decision. The district court ruled that the committee acted in "good faith" in denying Hildenbrand's landscaping plan and, therefore, satisfied the governing legal standard. The district court rejected Hildenbrand's arguments that the committee applied unwritten or nonexistent restrictions to the plan and had allowed comparable landscape motifs for other residents. The district court reasoned that good faith could shield a committee decision that differed from earlier decisions for other residents or was "erroneous or unfair." In its memorandum decision on this point, the district court focused on what it perceived to be the "state of mind" of the committee members as they reviewed the landscaping plan. Hildenbrand filed a notice of appeal seeking review of the district court's determination and other issues arising from the trial.

After the notice had been filed, the district court took up the Home Association's request for a judgment covering the fines assessed against Hildenbrand and an award of its litigation costs, including attorney fees. The district court awarded the association $85,000 in attorney fees but withheld any ruling on the association's fines specifically to await the outcome of Hildenbrand's appeal. The district court also stayed its order for removal of the landscaping during the appeal, conditioned on Hildenbrand posting a bond for the attorney fees. We understand Hildenbrand has posted the bond. He then filed a second notice of appeal pertaining to the attorney fees.

LEGAL ANALYSIS

Before turning to the issue on which we reverse and remand, we mention two procedural wrinkles in the appeal ostensibly affecting our jurisdiction. Neither, however, prevents us from going forward.

First, we questioned whether the district court had entered an appealable final judgment or decision because the matter of the fines had been left unresolved. We issued a show cause order to the parties, received supplemental briefing from them, and addressed the jurisdictional question during oral argument. Shortly after the argument, the Homes Association filed a supplemental brief stating its claim for fines against Hildenbrand had been "withdrawn for purposes of this litigation." Based on that representation, our concerns about the lack of appellate jurisdiction for want of a final judgment have been alleviated.

Second, the Homes Association contends Hildenbrand did not file a timely appeal from the district court's order that he remove the landscaping and, therefore, this court lacks jurisdiction to consider any issue that could negate the order. A party's failure to file a timely notice of appeal deprives this court of jurisdiction. *Andres v. Claassen*, 238 Kan.

6

732, 737, 714 P.2d 963 (1986); *Ohlmeier v. Jones*, 51 Kan. App. 1014, 1024, 360 P.3d 447 (2015). The association characterizes the order as a permanent injunction and argues the 30-day period to appeal ran from the entry of the order. See K.S.A. 2015 Supp. 60-2102(a) (injunction among district court rulings immediately appealable as a matter of right); K.S.A. 2015 Supp. 60-2103(a) (time to appeal). The order did not constitute an injunction, so the argument fails. We have jurisdiction to consider all of the issues Hildenbrand has raised.

The district court appears to have ordered specific performance of the contractual covenants between Hildenbrand and the Homes Association that require abatement of unapproved changes to or uses of property within the development. But the district court set no defined time period or particular date for Hildenbrand to perform that obligation; it simply required compliance "within a reasonable time." An order for specific performance may be functionally treated as a mandatory injunction for purposes of appeal if it states with particularity when the party must act and what the party must do. See *Petrello v. White*, 533 F.3d 110, 114-16 (2d Cir. 2008); 16 Wright & Miller, Federal Practice and Procedure:  Jurisdiction § 3922 & n.37 (2012). Otherwise, the order should not be considered injunctive relief. *Petrello*, 533 F.3d at 116 ("[T]he order did not constitute an injunction because it did not impose any deadline for [the defendant] to perform any act."). That is the case here. The district court's decisions to stay the order to allow Hildenbrand to submit his landscape plan to the Architectural Review Committee during the litigation and to again stay the order on the appeal bolster our conclusion. Because Hildenbrand never faced a specific deadline for removing the landscaping, the order could not be considered an injunction for purposes of triggering the time to appeal. See K.S.A. 2015 Supp. 60-906 ("Every order granting an injunction . . . shall be specific in [its] terms."); *Wing v. City of Edwardsville*, 51 Kan. App. 2d 58, 67-68, 341 P.3d 607 (2014) (noting specificity requirement for injunctions and recognizing federal law as analogous persuasive authority), *rev. denied* 302 Kan. 1022 (2015); see also *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 893 (7th Cir. 2011) (injunction must be

sufficiently definite that "the enjoined party is fairly apprised of his responsibilities and the court can objectively assess compliance"); *First Assembly of God, Alexandria, Va. v. City of Alexandria, Va.*, 739 F.2d 942, 944 (4th Cir. 1984) (specificity requirement protects enjoined parties by informing them of precisely what they must do to comply with injunction).

We now turn to the issue on which we remand. The district court applied an incorrect legal standard to the Architectural Review Committee's decision on the landscaping plan, thereby handing the Homes Association an impermissible advantage. The proper standard is more demanding. Accordingly, we have to reverse the ruling of the district court and remand for further proceedings. We do not address the other issues, including Hildenbrand's challenge to the attorney fee award, since they are no longer ripe for review.

As the district court correctly recognized, the Kansas Legislature has enacted a statutory scheme aimed at regulating the interaction of homes associations and their members to require some measure of fair play in their relationship. K.S.A. 2015 Supp. 58-4601 *et seq.* Known as the Kansas Uniform Common Interest Owners Bill of Rights Act, the measure went into effect January 1, 2011, and applies to this dispute. K.S.A. 2015 Supp. 58-4601. The Kansas Act essentially parallels model legislation drafted in 2008 by the National Conference of Commissioners on Uniform State Laws. The conference recognizes Kansas as the only state to have adopted the Act. The Act is an abbreviated version of draft legislation comprehensively regulating the formation, operation, financing, and dissolution of home owners associations and similar organizations, such as condominium boards and real estate cooperatives. Several states have adopted versions of the comprehensive scheme, according to the National Conference.

8

Particularly pertinent here, the Kansas Act provides: "Every contract or duty governed by this act imposes an obligation of good faith in its performance or enforcement." K.S.A. 2015 Supp. 58-4604(a). The district court acknowledged K.S.A. 2015 Supp. 58-4604(a) governs the covenants, rules, and regulations of the Homes Association and the decisions of its various boards and committees. And the district court endeavored to apply the statutory "good faith" provision to the Architectural Review Committee's decision effectively denying Hildenbrand's landscaping plan. Neither Hildenbrand nor the Homes Association disputes the applicability of K.S.A. 2015 Supp. 58-4604(a). But they disagree about what it means. Nobody has found a Kansas appellate court decision construing K.S.A. 2015 Supp. 58-4604(a).

The issue we consider turns on the proper meaning of K.S.A. 2015 Supp. 58-4604(a) and whether the district court then correctly applied the statutory requirement. That is a question of law, so we owe no deference to the meaning the district court imputed to the term "good faith." *Unruh v. Purina Mills*, 289 Kan. 1185, 1193, 221 P.3d 1130 (2009) ("Interpretation of a statute is a question of law over which [an appellate] court has unlimited review."); *Wilson v. Larned State Hospital*, No. 112,193, 2016 WL 1079453, at *2 (Kan. App. 2016) (unpublished opinion).

Although the Kansas Act has some defined terms, "good faith" is not among them. See K.S.A. 2015 Supp. 58-4602. The drafters of the uniform act provided explanatory comments for each of its sections, including the provision that verbatim became K.S.A. 2015 Supp. 58-4604(a). The comment for that section states that "good faith" has two components: "'honesty in fact'" and "observance of reasonable standards of fair dealing." 7 U.L.A. Uniform Act § 4, comment p. 190. The comment points out that the concept of "good faith" for purposes of the uniform act has been drawn from and is synonymous with the term as it is used in the Uniform Commercial Code. See K.S.A. 2015 Supp. 84-1-201(b)(20) (defining "good faith" as "honesty in fact and the observance of reasonable

9

commercial standards of fair dealing"); K.S.A. 2015 Supp. 84-7-102(a)(6) (same definition of good faith).

The Homes Association contends we should ignore the comments to the uniform act because the Kansas Legislature did not adopt them. But the comments are not part of the uniform act, and we wouldn't expect the legislature to pass them or the governor to sign them. At the same time, however, we may presume the legislature knew the Kansas Act tracked a model statute accompanied by explanatory comments. If the legislature intended the Kansas Act to be applied in a way that differed from the comments, we may fairly conclude it would have modified the statutory language to reflect that difference. We, therefore, have no reluctance in reviewing the comment for persuasive guidance regarding the meaning of "good faith" as used in the Act. See 7 K.S.A. vii (Furse 1996) (explanatory note of Kansas Revisor of Statutes that comments accompanying Uniform Commercial Code may be "persuasive in the interpretation of the statutory material").

As we have indicated, good faith as used in K.S.A. 2015 Supp. 58-4604(a) imposes two distinct requirements. Honesty in fact entails a subjective intent to be forthright and fair. See K.S.A. 2015 Supp. 84-1-201, comment 20; *City of Riverdale v. Diercks*, 806 N.W.2d 643, 656 (Iowa 2011); *Community Bank v. Ell*, 278 Or. 417, 428-29, 564 P.2d 685 (1977). It is roughly the opposite of maliciousness in the sense of ill-will or a desire to do harm. This subjective mental state corresponds to the understanding of good faith as expressed in Kansas common law. See *Sowder v. Lawrence*, 129 Kan. 135, 138, 281 P. 921 (1929); *Richardson v. Gunby*, 88 Kan. 47, 50-51, 127 P. 533 (1912).

But adherence to reasonable standards of fair dealing—the second part of the statutory definition of good faith—imposes an objective requirement of evenhandedness in any given transaction or decision. See K.S.A. 2015 Supp. 84-1-201, comment 20 (fair dealing reflects "objective element" addressing parties' "conduct"); *Will v. Mill Condominium Owners' Ass'n*, 176 Vt. 380, 388, 848 A.2d 336 (2004). That is, the parties'

10

interaction actually must reflect a course of fair dealing. So the requirement goes beyond a subjective intent or state of mind to define behavior or actions. The reasonableness of the conduct will be shaped by the nature of the parties' relationship or the particular transaction in which they engage.

In *Will*, the Vermont Supreme Court applied that state's version of the comprehensive uniform act to find that a condominium association breached the good-faith requirement by selling a member's condominium at a private foreclosure sale that did not conform to "commercially reasonable" standards aimed at securing the best price and that lacked due regard for the owner's interests. 176 Vt. at 388. The court vacated the sale without deciding whether the association acted in subjective good faith or honesty in fact. The association's failure to use reasonable methods in conducting the sale was sufficient to negate good faith under Vermont's statutory scheme. 176 Vt. at 389. The good-faith requirement in Vermont's Uniform Common Interest Ownership Act, as applied in *Will*, matches the good-faith requirement in K.S.A. 2015 Supp. 58-4604(a). See 176 Vt. at 386 (quoting Section 1-113 of the Vermont Act and the explanatory comment).

Here, the district court looks to have applied only a subjective honesty-in-fact standard to the Architectural Review Committee's decision to deny Hildebrand's landscaping plan. The memorandum decision cites only the committee members' state of mind in finding the denial to be in good faith. Although acknowledging Hildenbrand's argument that good faith under the Act also requires reasonable standards of fair dealing, the district court never considers or applies that requirement. By failing to do so, the district court used too short a legal ruler to measure the evidence. And the resulting measurement impermissibly slighted Hildenbrand.

In arguing the point, Hildenbrand, however, hasn't been entirely faithful to what we understand the fair-dealing requirement entails. Hildenbrand has emphasized the

11

purported unfairness of the result—that he will have to remove $17,000 in landscaping at a cost he has estimated to be $40,0000. But the "fair dealing" that composes good faith under the Act (along with honesty in fact) addresses the process or means used in getting to the result. The method must be fair.

In some circumstances, a grossly inequitable result may be circumstantial evidence of an unfair process. The *Will* case offers a good example. There, the condominium association's private foreclosure sale of the unit for nonpayment of dues yielded a single bid for less than 15 percent of the amount the association believed to be the member's equity in the property. The Vermont Supreme Court considered the extreme disparity between the bid and the actual value of the condominium to be evidence of the unreasonableness of the sale process. *Will*, 176 Vt. at 388-89. At the same time, however, the court cautioned that a foreclosure sale should not be treated as falling outside the standards of fair dealing and, hence, good faith merely because "a better price could have been obtained." 176 Vt. at 388.

Here, there isn't the same kind of direct linear connection between an outcome startling in its demonstrable inadequacy and the process generating that outcome. The bid price of the condominium as compared to the owner's equity or the unit's fair market value reflects an accounting measured in dollars and cents. The reasonableness—or, perhaps more accurately, the unreasonableness—of the sale process would explain a readily quantifiable and obviously depressed outcome.

In this case, however, we are concerned with the deliberative processes of the Architectural Review Committee and a decision or outcome that can't be measured simply in financial terms or by some other easily calculated gauge. So the purported fairness of the result itself can't be the determinative factor as to whether the Homes Association and its Architectural Review Committee acted in good faith under K.S.A. 2015 Supp. 58-4604(a), even though Hildenbrand had tried to channel the debate in that

12

direction. By the same token, however, the result should not be reflexively discarded as irrelevant to the nature of the process. On remand, the district court may or may not find the ultimate outcome reached by the Architectural Review Committee to be of some evidentiary value under all of the circumstances in assessing the issue of statutory good faith.

Without attempting to limit the range of what the district court might consider, we think the process the Architectural Review Committee used in passing on other residents' landscape plans would be highly instructive on the issue of fair dealing. The committee's handling of other proposals deviating significantly from the model plans would be especially enlightening. How the committee treated Hildenbrand obviously would be material. After receiving the front and backyard plans, did the committee candidly identify particular concerns about the landscaping and give Hildenbrand a fair opportunity to speak to those concerns before it reached a final decision? Were the committee's reasons for rejecting the plans (or significant portions of them) clearly stated and well anchored in specific standards in the Homes Association's covenants, rules, and regulations? Limiting input from Hildenbrand or basing the rejection on unarticulated reasons or grounds that don't match written criteria would tilt against good faith. Those considerations retrace some of the evidence and argument the district court has already received. But they may be weighed differently in taking full account of the good-faith requirement imposed in K.S.A. 2015 Supp. 58-4604(a). Additional circumstances likely would inform the district court's determination of good faith. We do not mean to set out a strict template for that call or otherwise constrain what the district court may identify as pertinent in evaluating the committee's good faith.

We similarly offer no directive on remedy. If the district court were to find the Homes Association, operating through the Architectural Review Committee, failed to act in good faith within the meaning of K.S.A. 2015 Supp. 58-4604(a) in rejecting Hildenbrand's landscaping plan, the appropriate relief ought to be calibrated to the degree

13

of the statutory violation. An especially egregious breach of good faith arguably might be best remedied with a finding that a homes association's right to review had been forfeited as to the particular landscaping plan or other request. The remedy ought to be tailored to the circumstances of the case in light of the request and the association's handling of it.

Because the district court applied an incomplete test for good faith in ruling on the propriety of the Architectural Review Commission's rejection of Hildenbrand's landscaping plan and that error favored the Homes Association, we reverse and remand for further proceedings consistent with this decision. On remand, the district court must decide the matter of good faith in conformity with the twin requirements of K.S.A. 2015 Supp. 58-4604(a) addressing both subjective honesty in fact and objectively reasonable standards of fair dealing. We leave it to the district court, in consultation with the lawyers for the parties, to fashion the appropriate proceedings, which could range from reconsideration of the present trial record with or without additional briefing or argument to reopening of the record for additional evidence, taking account of the admonition of K.S.A. 60-102 that civil proceedings be conducted in a way conducive to "the just, speedy and inexpensive determination of every action."

Reversed and remanded with directions.

14